JOHN ROONEY, Plaintiff-Appellee, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

First District (2nd Division)   No. 82—2881

Opinion filed October 4, 1983.—Rehearing denied December 6, 1983.

Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago (Victor J. Piekarski, of counsel), for appellant.

Karr and Valenti, Ltd., of Chicago (Thomas P. Valenti, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals from an order of the trial court denying its motion for summary judgment and granting summary judgment to plaintiff, John Rooney (Rooney). On appeal, State Farm contends that because of Rooney's alleged failure to comply with the notice requirements of his State Farm auto insurance policy, the trial court erred in entering judgment in favor of Rooney in his action for declaratory judgment. Ill. Rev. Stat. 1979, ch. 110, par. 57.1.

Rooney allegedly sustained an injury to his lower back when, on January 10, 1980, at approximately 6:30 a.m., an automobile he owned and was driving was struck in the right rear by an unidentified vehicle. The accident occurred as Rooney slowed for another vehicle which was making a left turn on River Road in Franklin Park, Illinois.

The automobile insurance policy issued to Rooney by State Farm contained the following provisions:

"REPORTING A CLAIM—INSURED'S DUTIES

1. Notice to Us of an Accident of Loss.

The insured must give us or one of our agents written notice of the accident or loss as soon as reasonably possible.

* * *

4. Other Duties Under Medical Payments, Uninsured Motor Vehicle, Death, Dismemberment and Loss of Sight, and Loss of Earnings Coverages.

The person making claim also shall:

a. give us all the details about the death, injury, treatment and other information we need to determine the amount payable.

* * *

c. under the uninsured motor vehicle coverage:

(1) report a 'hit-and-run' accident to the police within 24 hours and to us within 30 days.

* * *

SECTION III—UNINSURED MOTOR VEHICLE—COVERAGE U

Two questions must be decided by agreement between the insured and us:

1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and

2. If so, in what amount?"

Rooney's discovery deposition, taken on June 15, 1982, is relied upon by both parties. Rooney stated that on January 10, 1980, the day of the incident, he "reported" the accident from his place of work by telephone to the Franklin Park police department and to the office of State Farm agent Irving Castings from whom he had purchased the policy. Rooney did not initially tell the police that he was injured, but the written report he filed with the police on February 6, 1980, does reflect that Rooney injured his back in the auto accident.

Rooney further stated in his deposition that when he telephoned Castings' office he spoke to "one of the girls in the office" and told her that his auto had sustained damage in a hit-and-run accident. The following colloquy then occurred between State Farm's counsel and Rooney:

"Mr. Piekarski: Did she ask you if you had been injured in the accident?

Rooney: Yes.

Mr. Piekarski: Did you tell her you had been injured in the accident?

Rooney: No."

The office girl instructed Rooney to bring his auto to a State Farm claims office for inspection. Rooney did so but at no time did he inform any State Farm employee that he had suffered any bodily injuries in the January 10, 1980, accident.[1]

On January 11, 1980, the day following the auto accident, Rooney visited the clinic of his employer's physician and was examined for a claimed lower back injury. Rooney did not tell the doctor that his injury was the result of an auto accident. Instead, Rooney told the phy-

---

[1]Subsequent to the inspection of Rooney's auto, his property damage claim was satisfied by State Farm with the payment of approximately $380 for repairs.

sician that he was injured on January 8, 1980, while shoveling sand at work.[2] The following colloquy occurred between State Farm's counsel and Rooney:

"Mr. Piekarski: Did you tell any of the doctors that treated you that you had been involved in an automobile accident?

Rooney: No.

Mr. Piekarski: Why not?

Rooney: Well, I figured if I have workmen's compensation, I have my weekly check, that was the reason. I had no other resources of any kind, no other income.

Mr. Piekarski: Did you believe if you told these doctors about the accident, you would have not received the workmen's compensation benefits?

Rooney: I think so."

In May 1981 Rooney underwent lower back surgery (laminectomy) at Loyola Hospital. Rooney filed a workmen's compensation claim for the January 8, 1980, injury and received benefits until October 1981. In July 1981, Rooney submitted to the workers' compensation insurance carrier hospital bills approximating $9,000.[3]

On August 24, 1981, Rooney, through counsel, made a demand of State Farm to arbitrate his uninsured motorist claim for injuries allegedly sustained by him in the January 10, 1980, auto accident. On October 22, 1981, State Farm in a letter to Rooney reserved the right to deny liability for Rooney's uninsured motorist claim because of Rooney's alleged failure to comply with the notice requirements of the policy. On March 4, 1982, Rooney filed an action for declaratory judgment asserting that State Farm's denial of benefits under its uninsured motorist provisions breached his insurance contract.

State Farm filed an answer denying Rooney's allegations. State Farm also filed a counterclaim seeking declaratory relief, asserting that Rooney "breached his duties under the terms and conditions of the policy issued to him *** in failing to report the 'hit-and-run' accident to police within 24 hours and in failing to advise the company of an uninsured motorist claim within 30 days."

Both parties moved for summary judgment. Following oral argument and a review of the memoranda filed by the parties in support

---

[2]Rooney also stated in his deposition that during the summer of 1979 he had missed six weeks of work due to a lower back injury which he sustained when he fell from his truck while at work.

[3]Rooney also submitted a claim for these same hospital bills to State Farm under the medical benefits provision of his automobile policy. This claim was subsequently withdrawn by Rooney and is not involved here.

of their motions for summary judgment, the trial court found that "the telephonic notice given to the agent of State Farm and the police department was adequate notice under the terms and conditions of the policy and the applicable law." The trial court denied State Farm's motion for summary judgment and granted Rooney's motion for summary judgment. State Farm appeals from that order.

State Farm asserts that because of Rooney's alleged failure to comply with the notice requirements of the uninsured motorist provision of his policy, the trial court's order was error.

Generally, compliance with the notice requirements of an insurance policy is necessary to establish coverage. (*Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 300, 388 N.E.2d 253, quoting *INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 83, 379 N.E.2d 34.) The primary purpose of such a notice requirement is to enable the insurer to make a timely and thorough investigation of a claim and to protect itself against unjustifiable claims. *United States Fidelity & Guaranty Co. v. Maren Engineering Corp.* (1980), 82 Ill. App. 3d 894, 898, 403 N.E.2d 508.

State Farm acknowledged that on January 10, 1980, Rooney, by telephone, notified the police and a State Farm representative that he had been involved in a hit-and-run accident. State Farm contends, however, that because of Rooney's alleged denial of bodily injury, the information provided by Rooney to the police and to State Farm was, under the terms of his policy, insufficient notice to support a claim for uninsured motorist protection.

■ It is well established that notice of an accident is "distinct and different" from the proof of claim requirements of the uninsured motorist provision and "compliance with one is not necessarily compliance with the other." (8C Appleman, Insurance Law & Practice sec. 5083.45 (1981); see also *Martinson v. American Family Mutual Insurance Co.* (1974), 63 Wis. 2d 14, 20, 216 N.W.2d 34, 37.) Notice of an accident will alert an insurer to the occurrence of an event from which a claim may arise, whereas " '[t]he object of requiring proofs of loss is to afford proper information to the insurance company as to the facts regarding the loss and its liability, in order to make it possible for it to adjust and determine the amount and extent of the loss.' " *Martinson v. American Family Mutual Insurance Co.* (1974), 63 Wis. 2d 14, 20, 216 N.W.2d 34, 37, quoting 8 D. Blashfield, Automobile Law & Practice sec. 331.1, at 146 (1966).

Rooney argues that after he notified State Farm of his accident, State Farm apparently chose not to investigate beyond the questions posed to him by the office girl when he telephoned the agent's office

on January 10, 1980. Moreover, Rooney contends that he was not required to "go forward" with information about his bodily injuries in the absence of a request by State Farm that he provide such information.

State Farm, on the other hand, contends in this appeal that a request for such information was in effect made during the telephone conversation between Rooney and the State Farm representative when, on January 10, 1980, she asked him if he had been injured. According to State Farm, although Rooney was aware of his bodily injuries, his statement that he was not so injured negated any claim and rendered further investigation by State Farm unnecessary.

During argument before the trial court, State Farm had also urged that Rooney's denial of bodily injury was a defense under his policy against his claim for uninsured motorist coverage. The court, however, did not accept this premise and stated that "[t]he only question [was] whether the notice to the agent of State Farm was adequate notice so as to satisfy the terms and conditions of the policy." Following the trial court's granting of Rooney's motion for summary judgment, State Farm persisted in its contention that Rooney's denial of bodily injury excused coverage under the uninsured motorist provision of its policy. The following colloquy occurred between the court and State Farm's counsel:

"Mr. Piekarski: He lied. He lied to them. I mean, I don't think that's notice. It's as simple as that.

\* \* \*

The court: I think you're entitled to raise these fact questions before the arbitrator.

Mr. Piekarski: The arbitrator's not entitled—those are questions of coverage. Those have to be done—those have to be determined here. The only issue before the arbitrator in arbitration is damages.

The court: *If you wish to amend your answer I'll give you leave to amend your answer and set forth other matters.*

I think I agree that you're entitled to a hearing with respect to his conduct, but I can't say there was insufficient notice.

Mr. Piekarski: \*\*\* The questions as to whether or not he lied are important only to the issue of notice, and that is to be decided here.

\* \* \*

The court: The only thing I'm talking about is notice. I'm not talking about whether the fellow is a consummate liar. I have nothing to judge [that by].

\* \* \*

The court: he did in fact call the police and notify them of the accident and I believe that's adequate notice." (Emphasis added.)

It is apparent that the trial court here considered as the pivotal question in granting summary judgment to Rooney whether the information given by Rooney to the police and to the representative of State Farm satisfied the notice requirements of his insurance policy. The court characterized as "peripheral" "factual matters" such as "whether this [was] a bona fide accident \* \* \*; whether he actually suffered injury \* \* \*; and whether he [had not] discover[ed] he was injured until after he talked to the lawyers." The court likewise considered as a "fact question" whether Rooney "lied" when he notified State Farm that he was involved in a hit-and-run accident but had suffered no bodily injuries. The court agreed that State Farm was "entitled to a hearing with respect to his [Rooney's] conduct" and suggested that State Farm could "raise these fact questions before the arbitrator."

State Farm suggests that the colloquy and comments set forth above indicate that the trial court may have misinterpreted the scope of an arbitrator's jurisdiction when a claim for uninsured motorist protection is involved. It apparently feared that it would be precluded from arguing in arbitration such facts as the trial court had termed "peripheral."

■ Under Illinois law, coverage disputes are not included in arbitration provisions of automobile liability policies relating to resolution of disputes arising under an uninsured motorist provision, and arbitration is limited to a determination of issues of liability of the uninsured third-party tortfeasor and damages to the insured. *Allstate Insurance Co. v. Horn* (1974), 24 Ill. App. 3d 583, 592, 321 N.E.2d 285; *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 94, 242 N.E.2d 149.

State Farm appears to argue that in assessing whether the notice requirements of its policy have been met so as to exclude any dispute as to coverage, the court must first consider Rooney's questionable conduct such as his "lying." State Farm seemingly overlooks, however, that it was invited by the trial court to amend its answer and to "set forth other matters," implying, we believe, that the court would have then considered Rooney's "conduct" before granting him summary judgment. Since the record reveals no action by State Farm to amend its answer, we must presume that State Farm chose to rely only upon the adequacy of notice and not upon questions of Rooney's conduct.

■■ On this record, therefore, we conclude that the trial court's action in denying State Farm's motion for summary judgment and granting Rooney's motion for summary judgment was not error.

For the reasons herein stated, we affirm the order of the trial court.

STAMOS and HARTMAN, JJ., concur.