FIRST DIVISION
July 24, 2006

No. 1-05-0749

HOWARD SHULTZ,                                  )    Appeal from the
                                                )    Circuit Court of
            Plaintiff-Appellant,                )    Cook County.
                                                )
            v.                                   )
                                                )
ATLANTIC MUTUAL INSURANCE COMPANY,              )    Honorable
                                                )    Richard J. Billik,
            Defendant-Appellee.                 )    Judge Presiding.


JUSTICE ROBERT E. GORDON[1] delivered the opinion of the court:

Plaintiff Howard Shultz appeals from orders of the circuit court granting summary judgment in favor of defendant Atlantic Mutual Insurance Company and against him on count I of his amended complaint for confirmation of an arbitration award (the award) and entry of judgment thereon pursuant to the Illinois Uniform Arbitration Act (the Act) (710 ILCS 5/1 (West 2000)).  On appeal, plaintiff contends that the trial court erred as a matter of law by: (1) confirming the award while also concluding that the 90-day time limit for modification, correction or vacation of an arbitration award under the Act did not apply to preclude defendant from litigating its "policy limits" defense to plaintiff's confirmation complaint; and (2) declining to enforce the "trial *de novo*" provision of plaintiff's insurance policy (the policy)

_____

[1]Justice Robert E. Gordon is substituted as a panel member in lieu of Justice Anne M. Burke, who was appointed a Justice of the Supreme Court of Illinois on July 6, 2006.  Justice Gordon has reviewed the record and briefs and listened to a tape of the oral argument.

1-05-0749

against defendant, which makes the arbitrator's decision "binding" if neither side demands a trial within 60 days of the award. For the reasons set forth below, we affirm.

STATEMENT OF FACTS

On February 4, 1998, defendant issued plaintiff an insurance policy, which was in effect for one year. The policy covered plaintiff's two automobiles and included uninsured/underinsured motorist (UM/UIM) coverage up to $500,000 and "personal umbrella liability" coverage up to $2,000,000. The UM/UIM portion of the policy contained sections entitled "What We Cover," "Damages We'll Pay," and "Damages We Won't Pay." The "Damages We Won't Pay" section contained a clause entitled "Arbitration," which stated: "If an insured person disagrees with us about: whether that person is entitled to damages under this coverage; or the amount of damages under this coverage, that person can demand arbitration. The demand must be in writing." The section explained that, for arbitration, each side would select an arbitrator, with the two arbitrators then selecting a third arbitrator. A clause within the arbitration section stated:

> "If the arbitrators award damages higher than
> the minimum limit for bodily injury liability
> in the state where your car is principally
> garaged, either side can demand a trial. The
> demand must be made within 60 days of the

2

> arbitrator's decision.  If neither side
>
> demands a trial, the decision is binding."

The personal umbrella coverage section of the policy did not contain an arbitration clause.

On July 11, 1998, plaintiff suffered injuries after being hit by a car while crossing a Chicago city street as a pedestrian. The driver of the car that hit plaintiff was insured by American Family Insurance Company, which paid plaintiff $100,000, the limit of the driver's policy. Plaintiff then submitted a claim to defendant seeking payment for the remainder of his claimed damages under the UM/UIM and personal umbrella liability coverage sections of the policy. Defendant paid plaintiff $10,000 for medical expenses, which was considerably less than the total amount plaintiff believed he was entitled to receive. Plaintiff then demanded arbitration and selected an arbitrator, pursuant to the terms of the policy.[2]

On August 30, 2001, before defendant responded to plaintiff's demand for arbitration, plaintiff filed a complaint for declaratory judgment as to the coverage limits of the policy. Plaintiff also requested in his complaint that the trial court compel defendant to

---

[2]The record does not contain plaintiff's insurance claim, or any records of payment to plaintiff from either insurance company. These events were referenced in plaintiff's complaint for declaratory judgment "upon information and belief," and are not disputed by defendant. The $2,500,000 amount sought by plaintiff was referenced in statements made by plaintiff's counsel during a deposition taken in the instant case and in a letter to defendant's counsel following the arbitration proceedings.

name an arbitrator. On October 11, defendant filed its motion to dismiss plaintiff's complaint, in which it argued that plaintiff's request for a declaratory order was premature unless and until the arbitrators rendered an award in excess of the $500,000 limit of the UM/UIM portion of the policy. On February 22, 2002, the trial court granted defendant's motion to dismiss plaintiff's complaint without prejudice.

On May 28, 2002, Terry Takash, defendant's counsel, faxed a letter to Patrick Condron, plaintiff's counsel, stating:

> "As you know, we are scheduled to initiate the underinsured ('UIM') arbitration hearing tomorrow. You have agreed on behalf of yourself and your client that in going forward with the underinsured motorist arbitration hearing, [defendant] in no way waives any insurance coverage defenses with respect to [plaintiff's] UIM claim. [Defendant's] defenses include, but are not limited to, that [plaintiff] is in no way entitled to the personal umbrella limits of [the] policy with regard to his UIM claim. [Defendant] maintains the position that its policy only provides a maximum of $500,000 for such a claim. Please demonstrate your agreement and acknowledgment of the above by executing this

4

> correspondence and faxing back to the
> undersigned. We appreciate your attention to
> this matter."

Later in the day, Condron indicated his agreement by signing the "nonwaiver" letter and faxing it back to Takash. The cover sheet for this fax was also signed by Condron and bore a handwritten note stating: "Enclosed is signed letter regarding non waiver of umbrella defense. We will not disclose insurance limits or coverage dispute."

On September 26, 2002, the arbitration award was issued. The award stated, "We find for [plaintiff], and against [defendant], in the amount of $925,000.00 and with a set off of $110,000.00, leaving a net award in the amount of $815,000." On October 9, Condron sent defendant a letter seeking payment that stated, in pertinent part: "The arbitrators have found that [plaintiff's] injury is worth *** $925,000. *** We feel that you should pay the entire amount $815,000 ($925,000 - $110,000 setoff) immediately. At minimum, [you] should tender the $500,000 UM/UIM coverage immediately while the court determines the applicability of the personal umbrella coverage of the other $315,000." Takash was also sent a copy of the letter. On October 29, defendant sent plaintiff $390,000, which brought the total amount received by plaintiff to $500,000, the limit of his UM/UIM coverage under the policy.

On February 13, 2003, plaintiff filed a complaint in the Law Division of the circuit court to confirm the arbitration award. On

1-05-0749

May 20, defendant filed a motion to dismiss plaintiff's complaint, in which defendant stated that it was "not challenging the level of Plaintiff's damages reflected in the arbitration award," but that it "must be permitted to litigate the coverage issues presented by the amount of the award in excess of the amount already paid by [defendant]" to plaintiff. On June 4, the trial court entered an order allowing Condron to withdraw and to be replaced by substitute counsel. The order also instructed plaintiff to file an amended complaint.

On July 21, 2003, plaintiff filed a two-count amended complaint for declaratory and other relief in the Chancery Division of the circuit court. In count I of the amended complaint, plaintiff requested entry of an order confirming the arbitration award and judgment in favor of plaintiff against defendant in the amount of $425,000, plus interest, pursuant to the Act. Plaintiff alleged that, because defendant did not challenge the arbitration award within 90 days of its issuance, as required by the Act, or request a trial within 60 days of its issuance, as required by the policy, he was "entitled to an order confirming the arbitration award." In count II of the amended complaint, plaintiff alleged that the policy's UM/UIM coverage had a $500,000 limit for each vehicle he owned, thus making the total UM/UIM coverage

1-05-0749

$1,000,000.[3]

On August 19, 2003, defendant filed a motion to dismiss plaintiff's complaint which contained the same argument defendant successfully employed against plaintiff's Law Division complaint. On January 5, 2004, the trial court denied defendant's motion to dismiss. On May 6, Condron, who participated in the arbitration proceedings, was deposed. During his deposition, Condron stated that one of the main issues in the arbitration was plaintiff's claim for lost wages, and that, during the arbitration proceedings, he argued that plaintiff had lost a great deal of income from his job as a day trader as a result of being injured. Condron also stated that he did not remember any discussion of the policy terms during the arbitration proceedings. Condron further stated that he never advised defendant that the arbitration award included a determination of coverage, and that he had no discussions with defendant as to how to resolve coverage.

On June 14, 2004, plaintiff filed a motion for summary judgment on count I of the amended complaint, arguing that defendant's failure to challenge the arbitration award or request a

---

[3]Count II was decided in favor of defendant, with the trial court finding that the UM/UIM coverage for this occurrence was limited to $500,000. Plaintiff does not appeal this decision.

7

trial entitled him to the award. Plaintiff also claimed that defendant could have demanded a trial within 60 days of the issuance of the arbitration award under the policy's trial *de novo* provision, and because it did not, the arbitrator's decision was binding. Plaintiff relied on cases from Colorado and California in support of his argument.

On August 23, 2004, defendant filed its own motion for summary judgment on count I, arguing, first, that it had no basis to contest the award pursuant to the Act since the award did not determine policy limits, but only the level of plaintiff's damages, and second, that the time limit for challenging an arbitration award did not apply to the policy limits issue because that issue was neither considered nor decided by the arbitrators. Defendant also contended that it could not request a trial following the issuance of the arbitration award because trial *de novo* policies are deemed unenforceable in Illinois. Defendant's motion was supported by the deposition of Condron, and affidavits from Takash, who represented defendant in the Law Division case as well as at the arbitration proceedings, Steve Sheldon, defendant's claims representative who handled plaintiff's claim, and Patrick Mahoney, an attorney who was one of the arbitrators who issued the arbitration award at issue in the instant case.

Takash's affidavit stated, in pertinent part, "During the arbitration, [defendant] contested the amount of damages claimed by Plaintiff. However, the parties never submitted any argument,

8

testimony or other evidence as to whether Plaintiff was entitled to UIM coverage under the [policy] or the amount of UIM coverage limits within the [policy]." Sheldon's affidavit stated, in pertinent part:

> "[Defendant] did not agree to arbitrate the issue of whether the [policy] provided UIM coverage in excess of the express policy limits of $500,000. In fact, [Takash] obtained an express agreement from Plaintiff not to submit coverage issues to arbitration. *** When the arbitrators issued their award following the Arbitration, it was [defendant]'s understanding and belief that the award naturally determined the issues contested during the arbitration, namely: the amount and/or level of Plaintiff's damages."

Mahoney's affidavit stated, in pertinent part:

> "During the arbitration, we were not provided with a copy of any insurance policy issued to [plaintiff], and we did not review any evidence, testimony, or documents related to any coverage issues. During the arbitration, we did not make any decision as to whether [plaintiff's] injuries or damages were covered by an insurance policy issued by [defendant]

9

or the amount of any coverage available to [plaintiff]."

On September 10, 2004, plaintiff filed a motion to strike portions of the affidavits. On December 29, the trial court issued an order granting plaintiff's motion to strike portions of the affidavits, granting defendant's motion for summary judgment on count I of the amended complaint, and denying plaintiff's motion for summary judgment on count I of the amended complaint. In its written ruling, the trial court stated, "although the finding in the arbitration award in favor of plaintiff on his damages in the amount of $815,000 is confirmed, defendant is not barred from litigating the merits of whether the entire amount, or some portion thereof, is covered under the UIM limits of the [policy]."

The trial court cited *Harris v. Allied American Insurance Co.*, 152 Ill. App. 3d 88, 504 N.E.2d 151 (1987), twice in its ruling. In describing the award as one that "is silent on whether any portion of [the $925,000 awarded by the arbitration panel] was due under the UIM coverage under the Policy," the trial court referred to an award similarly limited in scope found in *Harris*. Then, in finding that "[t]he 90-day time limitation period in the Act does not bar [defendant] in this action from asserting as a defense the issue of the liability limit it claims is contained in the Policy for UIM coverage which was not decided by the arbitrators," the trial court cited *Harris*'s citation to *Meade v. Lumbermens Mutual Casualty Co.*, No. 61418 (December 9, 1982) ___ Fla. ___, 423 So. 2d

10

1-05-0749

908 (Fla. 1982), which advanced a similar proposition.

The trial court also stated"

> "The scope of the result of the arbitration award is consistent with the parties' understanding of what the arbitrators would decide and the arbitrators decided [plaintiff's] damages, but did not address [defendant's] claimed policy defense. [Defendant] is not challenging the arbitrator's decision on the amount of damages found in the award. *** This court is not persuaded by the out-of-state authority cited to by [plaintiff] to support his argument on the application of the 90-day limitation period under the Act, especially in view of the agreement to reserve [defendant's] purported policy defense claim and the lack of any determination made by the arbitrators on the issue of coverage limits. *** [Defendant] is also not barred from raising its policy defense on UIM limits because it did not demand a trial de novo within 60 days of entry of the arbitration award."

This appeal followed.

ANALYSIS

11

Plaintiff contends that the trial court's decision "transformed" defendant's pre-arbitration reservation of its coverage defenses into an agreement to waive the 90-day rule and a license for defendant to litigate its alleged coverage defenses *ad infinitum*. Plaintiff maintains that the trial court erred in disregarding rules set forth by the Act that unequivocally require judicial action within 90 days of an arbitration award to avoid confirmation of the award.

Plaintiff argues that the "only conceivable time frame" within which defendant could assert its "defense that the Award exceeded the applicable UIM coverage limits" was the 90-day limit imposed by sections 11-13 of the Act. Plaintiff maintains that defendant could have attempted to vacate, modify, or correct the award pursuant to the Act. Plaintiff contends that defendant could have argued that the arbitrators exceeded their powers, that the arbitrators issued an award on a matter not submitted to them, or that the award was imperfect in a matter of form. Plaintiff also argues that defendant's failure to exercise any of these remedies provided by the Act within 90 days of the issuance of the award barred it from now asserting any policy limits defense.

In addressing the wording of the arbitration award, plaintiff notes the absence of any limiting language such as "liability of the underinsured motorist," or "damages," as illustrative of the fact that the award was determinative of the limits of UIM coverage applicable to plaintiff's loss. Plaintiff argues that if the

12

arbitrators were authorized only to decide the extent of plaintiff's damages, then the award, which, plaintiff argues, purported to establish the amount of defendant's liability in excess of what defendant perceived were its policy limits, should either have been clarified, modified, or vacated.

Plaintiff also contends that the May 28, 1998, exchange of letters between Takash and Condron contains nothing that could be construed as a waiver of plaintiff's entitlement to a confirmation of the award after 90 days, or of defendant's responsibility to judicially challenge the award. Plaintiff argues that because defendant failed to specify when, how, or by whom the coverage dispute would be resolved, the 90-day time limit of the Act applies to confirm the arbitrator's award in his favor. Plaintiff maintains that allowing defendant to raise a policy limit defense for the first time in response to a confirmation proceeding would not only render the 90-day time limit in the Act a nullity, but it would contravene the objectives of arbitration itself, which are to provide a streamlined and expedited method of resolving disputes. Plaintiff further argues that the trial court's reliance on *Harris* was misplaced because the trial court did not determine that the arbitration award in the instant case was "nonfinal" as was so determined in *Harris*.

Plaintiff also contends that the arbitration award became binding under the *trial de novo* terms of the policy when neither party demanded a trial within 60 days of the award. Plaintiff

13

maintains that such terms do not violate public policy, and that defendant's failure to avail itself of the specific remedy afforded by its own policy entitled him to a confirmation of the award.

Defendant contends that, since the Act applies only to issues that were subject to arbitration, the 90-day time limit only applies to the issue of plaintiff's damages, not the issue of policy limits or coverage. Defendant then lists five passages found in plaintiff's brief that, defendant argues, show plaintiff's admission that the arbitration award only determined the amount of his damages. These passages state: "The parties excluded their 'policy limits' dispute from the scope of arbitration by their May 28 Letter Agreement"; "the issue of coverage limits was neither arbitrable nor arbitrated"; "[the policy] does not require the arbitrators to determine the amount of coverage available to the insured"; "the resolution of such a [coverage] dispute through arbitration was not contemplated by the [p]olicy"; and "Illinois law does not allow arbitrators to make coverage determinations in UIM disputes."

Defendant argues that plaintiff's attempt to apply the rules of the Act to the issues of coverage and policy limits is contrived because neither issue was even eligible for arbitration, having been specifically excluded by both the policy and the parties' pre-arbitration agreement. Defendant also argues that plaintiff waived any opportunity he might have had to arbitrate the coverage issue when he filed his first complaint seeking a judicial determination

14

1-05-0749

of the coverage dispute.

In response to plaintiff's claim that defendant waived its right to challenge the award by not contesting it within 90 days, defendant states that there was nothing in the award for it to contest. Defendant argues that, since the award did not determine whether the policy provided coverage for plaintiff in excess of the $500,000 of UIM coverage, there was nothing to challenge. Defendant supports its argument by noting the language of Condron's letter to Takash in which he states, "while the court determines the applicability of the personal umbrella coverage of the other $315,000." Defendant further supports its argument with the language of the award itself, which makes no mention of the limits of the policy or what amount of the award should be covered by defendant. Defendant notes that the arbitrators did not even have a copy of the policy or know of the policy limits when making their decision.

Defendant further argues that, should plaintiff's position be endorsed, every insurer would be required to challenge every arbitration award to obtain a determination as to which issues were not arbitrated and were not decided by the arbitration award. Defendant contends that this system would not only contravene the purposes of the Act, but also wreak havoc upon insureds because every time an insured would lose an arbitration to its insurer, he/she would have to petition for vacation, modification, or correction in order to challenge the award as only applying to the

15

dispute that was arbitrated. Defendant further contends that plaintiff is seeking a windfall of $425,000 without litigating the issue of whether that amount is covered by the limits of the policy. Defendant argues that such a finding would contradict the trial court's finding in count II that the UIM coverage was limited to $500,000.

In response to plaintiff's argument based on the trial *de novo* provision of the policy, defendant maintains that it could not demand a trial within 60 days of the award, as plaintiff suggests, because trial *de novo* provisions are unenforceable by insurers as violative of public policy.

A trial court's entry of summary judgment is reviewed *de novo*. *Carney v. Paul Revere Life Insurance Co.*, 359 Ill. App. 3d 67, 73, 832 N.E.2d 257 (2005). The interpretation of a statute is also reviewed *de novo*. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395, 789 N.E.2d 1211 (2003). Insurance contracts in which the parties agree to arbitration of a dispute or controversy are subject to the Act. 710 ILCS 5/1 *et seq*. (West 2000); *Pekin Insurance Co. v. Benson*, 306 Ill. App. 3d 367, 376, 714 N.E.2d 559 (1999). The purpose of arbitration is to achieve a final disposition of differences between parties in an easier, more expeditious and less expensive manner than by litigation. *Pillott v. Allstate Insurance Co.*, 48 Ill. App. 3d 1043, 1047, 363 N.E.2d 460 (1977).

"Despite the salutary purpose of the Act, parties are only

16

bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." *Flood v. Country Mutual Insurance Co.*, 41 Ill. 2d 91, 94, 242 N.E.2d 149 (1968). "The Act does not control which issues are subject to arbitration; this is governed by the arbitration agreement between the parties." *Flood*, 41 Ill. 2d at 93. "Coverage disputes are not to be included in arbitration provisions of automobile liability policies arising under uninsured motorist provisions." *Rooney v. State Farm Mutual Automobile Insurance Co.*, 119 Ill. App. 3d 112, 118, 456 N.E.2d 160 (1983). "Arbitration for these provisions is limited to a determination of issues of liability of the uninsured third-party tortfeasor and damages to the insured." *Rooney*, 119 Ill. App. 3d at 118.

"Under the Act, a party may move in the circuit court to confirm an arbitration award (section 11), to vacate an award (section 12), to modify or correct an award (section 13), or to enter judgment on an award (sections 14, 16)." *Pekin Insurance Co.*, 306 Ill. App. 3d at 376. "Upon application of a party, the court shall confirm an award unless within the time limits hereinafter imposed grounds are argued for vacating or modifying or correcting the award, in which case the court shall proceed as provided in Sections 12 and 13." 710 ILCS 5/11 (West 2000). More specifically, section 512 of the Act provides:

"Upon application of a party, the court shall
vacate an award where: (1) the award was

17

procured by corruption, fraud or other undue means; (2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party; (3) the arbitrators exceeded their powers; *** [and] (5)(b) an application under this section shall be made within 90 days after delivery of a copy of the award to the applicant, except that if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known."

710 ILCS 5/12 (West 2000).

Section 513 of the Act provides:

"Upon application made within 90 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where: (1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; (2) the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the

18

decision upon the issues submitted; or (3) the award is imperfect in a manner of form, not affecting the merits of the controversy."  710 ILCS 5/13 (West 2000).

"Since the agreement of the parties fixes the conditions, limitations and restrictions to be observed by the arbitrator in making his award, the agreement defines the limits of the arbitrator's powers."  *American Invsco Realty, Inc. v. Century 21*, 96 Ill. App. 3d 56, 58, 420 N.E.2d 692 (1981).  The validity of an award is not dependent upon issuance of reasons in support thereof, because, *inter alia*, it is presumed that the arbitrator did not exceed his authority.  *American Invsco Realty, Inc.*, 96 Ill. App. 3d at 58.  An arbitrator's award may not stand if it results in the contravention of paramount considerations of public policy. *Konicki v. Oak Brook Racquet Club, Inc.*, 110 Ill. App. 3d 217, 223, 441 N.E.2d 1333 (1982).  Without established authority in Illinois, the court may choose to examine authority from other jurisdictions. *Skipper Marine Electronics, Inc. v. United Parcel Service, Inc.*, 210 Ill. App. 3d 231, 239, 569 N.E.2d 55 (1991).

This case presents an issue not specifically addressed by any Illinois court. Accordingly, we shall examine cases from other states presenting similar facts.

*Kutch v. State Farm Mutual Automobile Insurance Co.*, No. 97SC260 (May 26, 1998) __ Colo. __, 960 P.2d 93 (Colo. 1998), relied on by plaintiff here, presents a factual scenario very

similar to the instant case. In *Kutch*, the plaintiff was injured in an accident with an uninsured motorist. *Kutch*, 960 P.2d at 95. After being paid $100,000 by the motorist's insurance company, the plaintiff then sought further payment from her own insurance company, the defendant. *Kutch*, 960 P.2d at 95. When the parties could not come to an agreement as to the amount of the plaintiff's damages, the issue went to arbitration, as dictated by a clause in the plaintiff's policy that called for the arbitration of (1) whether the plaintiff was legally entitled to collect damages from the driver or owner of the uninsured vehicle; and (2) "[i]f so, in what amount?" *Kutch*, 960 P.2d at 95.

During the arbitration, the panel did not consider what the defendant should be required to pay the plaintiff under the terms of the policy. *Kutch*, 960 P.2d at 95. In fact, the parties did not even give the arbitration panel a copy of the policy, or inform them of the policy's limits. *Kutch*, 960 P.2d at 95. At the conclusion of the arbitration, the panel awarded the plaintiff $176,800. *Kutch*, 960 P.2d at 95.

When the defendant paid the plaintiff $103,349.20, which represented the full $100,000 limit of the plaintiff's policy, plus costs, the plaintiff refused the tender and, instead, filed a complaint in the Colorado district court seeking confirmation of the full amount of the arbitration award. *Kutch*, 960 P.2d at 95. The plaintiff argued that the full award should be confirmed because the defendant did not seek to vacate or modify the

20

arbitration award within the 90-day time limit set by the Act, which Colorado had incorporated into its state statutes. *Kutch*, 960 P.2d at 95. In its answer, the defendant admitted that it did not file any application to vacate or modify the award, and invoked the policy limit as a defense to confirmation. *Kutch*, 960 P.2d at 95.

The district court confirmed the full award in favor of the defendant, finding that the defendant was time-barred by the Act from challenging the "potentially improper actions of the arbitrators." *Kutch*, 960 P.2d at 96. The appellate court reversed, holding that because the policy limit was not presented to the arbitration panel, and was not supposed to be submitted under the terms of the policy's arbitration clause, it did not have to be raised in a motion to vacate or modify the award and, instead, could be asserted as a defense to a complaint to confirm the award. *Kutch*, 960 P.2d at 96. The appellate court also stated that to find otherwise would allow an arbitration panel to increase the limit of liability contained in an insurance policy. *Kutch v. State Farm Mutual Automobile Insurance Co.*, No. 95CA1647, (February 6, 1997), ___ Colo. App. ___, 944 P.2d 623, 626 (Colo. App. 1997).

The *Kutch* court reversed the appellate court and reinstated the district court's order, holding that, under the Act, the defendant's failure to object or otherwise appeal the arbitration award within 90 days of its issuance prevented it from raising policy limits as a defense to the confirmation complaint. *Kutch*,

960 P.2d at 97. On appeal, the defendant argued that none of the statutory bases for a motion to vacate the award (fraud, corruption, partiality, arbitrators exceeding their powers) were applicable, which is why it made no motion to vacate or modify the award. *Kutch*, 960 P.2d at 98. The *Kutch* court, however, found that the defendant did "not persuasively explain why it could not have sought to vacate the award on the grounds that the arbitrators exceeded their powers *** by making an award in excess of the policy limits." *Kutch*, 960 P.2d at 98. The *Kutch* court held that "where a portion of an arbitration award goes beyond the matters submitted to the arbitrator for resolution, the award is void" because the arbitrators exceeded their powers. *Kutch*, 960 P.2d at 98.

In response to the defendant's argument that the arbitration panel did exactly what it was empowered to do, and nothing more, by determining only the extent of the plaintiff's damages, the *Kutch* court stated, "[i]f the arbiters were authorized only to decide the extent of the motorist's liability, and not to enter an award against [the defendant], then the award purporting to establish the amount of [the defendant]'s liability[4] exceeded their power." *Kutch*, 960 P.2d at 98. The *Kutch* court found that the plaintiff's argument, that the defendant could have moved to vacate the award on the ground that the arbitrators exceeded their power, was

_____

[4]The actual wording of the arbitration award is not contained in *Kutch*.

22

bolstered by the fact that the policy limit was not subject to arbitration. *Kutch*, 960 P.2d at 98. Elaborating on this point, the *Kutch* court stated, "While the arbitration panel's decision may have been based on a mistaken assumption as to the extent of coverage under the policy, both parties elected to withhold information as to the policy limits." *Kutch*, 960 P.2d at 98. The *Kutch* court concluded by stating, "[A]llowing [the defendant] to raise a defense on the merits for the first time in a confirmation proceeding would be contrary to the goals of the act: to provide a streamlined and expedited alternative to the courts for dispute resolution." *Kutch*, 960 P.2d at 99. See also *Weinberg v. Safeco Insurance Co. of America*, 114 Cal. App. 4th 1075, 1084 (Cal. App. 2004) (if an arbitrator makes an award of damages in excess of the policy limits, then the insurer must "move in a timely manner, either before the arbitrator or in court, to vacate the award or correct it or risk having the court confirm the entire award upon a motion by the insured").

Three justices disagreed with the majority in *Kutch* and filed a dissent. The dissent set forth a belief that the deadlines for vacating or modifying awards set forth in the Act did not apply to issues contractually excluded from the arbitration process. *Kutch*, 960 P.2d at 100 (Vollack, C.J., dissenting, joined by Kourlis, J., and Hobbs, J.). The dissent stated that "subjecting contractually excluded issues to the [Act]'s procedural requirements contravenes the intent of the parties, which controls and defines the manner in

23

which the arbitration is conducted," and that the issue of the defendant's liability under the policy was excluded from arbitration, which meant that it was not subject to any of the Act's time limits and could be raised as a defense to the confirmation complaint. *Kutch*, 960 P.2d at 101 (Vollack, C.J., dissenting, joined by Kourlis, J., and Hobbs, J.).

In addressing the majority's finding that the defendant could have moved to vacate the arbitration award by arguing that the arbitrators exceeded their powers, the dissent expressed its belief that

> "the majority is asserting that [the defendant] should have argued that the arbitration panel's award would be vacated because the panel exceeded its powers in not enforcing a contractual provision it was prohibited from considering. [The defendant] should not be forced to make such a strained legal argument in order to have a clear and unambiguous contractual provision enforced by a court of law." *Kutch*, 960 P.2d at 102 (Vollack, C.J., dissenting, joined by Kourlis, J., and Hobbs, J.).

The justices of the dissenting opinion also believed that the decision permitting the plaintiff to recover an amount exceeding her policy limit, despite her knowledge and acceptance of that

limit, came at the expense of the overriding policy of enforcing contractual provisions as they are written. *Kutch*, 960 P.2d at 102 (Vollack, C.J., dissenting, joined by Kourlis, J., and Hobbs, J.).

In *Meade,* relied upon by defendant, the parties disagreed as to the amount of the plaintiff's damages in a claim under his uninsured motorist coverage. *Meade*, 423 So. 2d at 909. The parties submitted the dispute to arbitration, and the arbitration panel issued an award that found the plaintiff's damages to be "$16,709.50 plus taxable costs." *Meade*, 423 So. 2d at 909. A month later, the defendant issued a check to the plaintiff for $10,000, which was his policy limit. *Meade*, 423 So. 2d at 909. The plaintiff did not accept the check and, instead, filed a complaint for confirmation of the full arbitration award. *Meade*, 423 So. 2d at 909. In its answer, the defendant presented a policy limit defense. *Meade*, 423 So. 2d at 909.

The trial court refused to consider the defendant's policy limit defense because, it held, the defendant had failed to seek vacation or modification of the arbitration award within the 90-day period prescribed by the Act. *Meade*, 423 So. 2d at 909. On appeal, the district court reversed the trial court, holding that the 90-day rule was not applicable where an issue disputed in a confirmation proceeding was not submitted to an arbitration panel. *Meade*, 423 So. 2d at 909. The *Meade* court affirmed the district court, finding that "the grounds for seeking vacation or modification of an arbitration award, as set out in [the Act,]

limit the applicability of the 90-day rule to issues submitted to an arbitration panel." *Meade*, 423 So. 2d at 910. The *Meade* court held that, since the issue of policy limits was not before the arbitration panel, the defendant was not precluded from raising the defense of policy limits in the confirmation proceeding. *Meade*, 423 So. 2d at 910.

In the instant case, as in *Kutch* and *Meade*, it is undisputed that the issue of policy limits was not before the arbitration panel. In fact, the issue was barred from arbitration by the wording of the policy, the May 28 letter agreement, and Illinois law. Its exclusion from the arbitration proceedings was also confirmed by Condron's deposition, three affidavits, and by plaintiff in his brief. Since the scope of the arbitration in the instant case was limited only to the issue of damages, as it was in *Kutch* and *Meade*, the arbitrators' powers were limited to determining only the amount of damages due to plaintiff, not the amount that was covered by the policy.

A review of plaintiff's argument that defendant could have moved to vacate the award pursuant to the Act requires an examination of the arbitrator's award. Such an examination reveals that the arbitration panel awarded damages of $925,000 to plaintiff, with no mention of how much of that amount defendant was obligated to pay. Any attempt to construe something more from that award runs counter to Illinois law, which prohibits extending an arbitration agreement beyond the clear language of the agreement.

See *Flood*, 41 Ill. 2d at 94. Plaintiff has not set forth how the award was imperfect in form or how the arbitrators awarded upon a matter not submitted to them, but has relied on *Kutch* in support of his contention that defendant could have argued that the arbitrators exceeded their power in awarding an amount of damages in excess of plaintiff's policy limit.

Plaintiff's attempt to convince us to consider *Kutch* as persuasive is misguided. First, the wording of the arbitration award in *Kutch*, which was held to "purport to establish the amount of [the defendant's] liability," was not included in the opinion, and therefore any comparison between the actual awards is impossible. *Kutch*, 960 P.2d at 98. Second, even if the wording were identical to that of the arbitration award in the instant case, *Kutch*'s explanation of how such an award is an example of arbitrators "exceeding their powers" is, as the dissent states, "a strained legal argument." *Kutch*, 960 P.2d at 102 (Vollack, C.J., dissenting, joined by Kourlis, J., and Hobbs, J.). The *Kutch* court interpreted an award pertaining only to the damages suffered by a plaintiff as an example of arbitrators exceeding their powers because the award exceeded the limit of an insurance policy to which the arbitrators were not privy. *Kutch*, 960 P.2d at 98. We find it noteworthy that the *Kutch* court based its reasoning on the speculation that "the arbitration panel's decision may have been based on a mistaken assumption as to the extent of coverage under the policy." *Kutch*, 960 P.2d at 98. Should we follow *Kutch*, we

27

would not only be basing a ruling on speculation, but would also be interpreting and enlarging an arbitration award in a manner that violates the basic rule that arbitration agreements, and by extension the unambiguous awards that result from arbitration proceedings, should not be construed beyond their clear language.

We instead choose to follow *Meade*, wherein the court found that issues not submitted to arbitration are not subject to the rules of the Act, including the 90-day rule. As in *Meade*, the parties in the instant case submitted only the issue of damages to arbitration, with the issue of policy limits excluded. Additionally, in this case, plaintiff's counsel even admitted, in his October 9, 2002, letter, that "the court [should] determine the applicability of the personal umbrella coverage of the other $315,000." Thus, we find that the 90-day rule applies only to that issue.

As a final matter, we disregard plaintiff's contention that the trial court erred in citing *Harris* in its ruling. The trial court cited *Harris* solely to provide an example of an arbitration award that concerned only the issue of damages, and to find guidance in *Meade*'s holding that issues not submitted to arbitration are not subject to the time limits of the Act, both of which are relevant to the instant case. Accordingly, we find that the trial court did not err in concluding that the failure of defendant to contest the arbitration award within 90 days did not bar it from asserting the defense of policy limits to plaintiff's

28

1-05-0749

confirmation complaint.

Lastly, we address plaintiff's trial *de novo* provision argument. Clauses in insurance policies that give either party the right to demand a trial if the amount of damages awarded by an arbitration panel exceeds the minimum limit for bodily injury specified by the law of the state in which the covered vehicle is principally garaged are called "trial *de novo* provisions." *Samek v. Liberty Mutual Fire Insurance Co.*, 341 Ill. App. 3d 1045, 1047, 793 N.E.2d 62 (2003). Trial *de novo* provisions are not violative of public policy. *Zappia v. St. Paul Fire & Marine Insurance Co.*, No. 1-05-0713, slip op. at __ (March 17, 2006).

The clause plaintiff relies on in the instant case states:

"If the arbitrators award damages higher than the minimum limit for bodily injury liability in the state where your car is principally garaged, either side can demand a trial. The demand must be made within 60 days of the arbitrator's decision. If neither side demands a trial, the decision is binding."

Plaintiff argues that the trial court erred in granting summary judgment because the trial *de novo* provision in the instant case did not violate public policy, as held in *Zappia*, and applied to the issue of defendant's liability beyond the policy limits.

While *Zappia* does support plaintiff's argument regarding trial *de novo* provisions and public policy, the validity of the provision

29

is not relevant to the instant case. Plaintiff's contention that defendant's failure to demand a trial within 60 days of the award rendered the award "binding" is correct, but irrelevant to his argument. What was rendered final, and "binding," by the confirmation of the award was the arbitrator's determination of damages, not a determination of defendant's liability beyond the policy limits. For the same reasons stated in our analysis of the applicability of the Act to the award, an extension of the award to include a determination of the liability of defendant under the policy would contravene Illinois law. Accordingly, we find that the trial court did not err in concluding that the failure of defendant to demand a trial within 60 days of the award did not bar it from asserting the defense of policy limits to plaintiff's confirmation complaint.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and McBRIDE, J., concur.