THIRD DIVISION
June 13, 2007

No. 1-06-2379

| | | |
|---|---|---|
| WAYNE CZARNIK, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff, | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| WENDOVER FINANCIAL SERVICES, an | ) | |
| EDS Company, CLAIMS ADJUSTMENT | ) | |
| SPECIALISTS, INC., FIDELITY NATIONAL | ) | |
| INFORMATION SOLUTIONS, INC. and | ) | |
| OLD NATIONAL BANCORP, | ) | |
| | ) | |
| Defendants | ) | No. 03 L 9331 |
| | ) | |
| (Old National Bancorp, | ) | |
| | ) | |
| Counterplaintiff-Appellee; | ) | |
| | ) | |
| Wendover Financial Services, an | ) | |
| EDS Company, | ) | |
| | ) | |
| Counterdefendant-Appellant; | ) | |
| | ) | |
| Fiedelity National Information Solutions, Inc., and | ) | |
| Claims Adjustment Specialists, Inc., | ) | Honorable |
| | ) | Donald J. Suriano, |
| Counterdefendants). | ) | Judge Presiding. |

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Wendover Financial Services (Wendover) appeals from a circuit court order denying its

1-06-2379

motion to compel arbitration of a counterclaim for contribution asserted by Old National Bancorp (ONB). Wendover contends that (1) the circuit court erred as a matter of law in holding that contribution claims are not arbitrable in Illinois; and (2) ONB's claim for contribution falls within the scope of the arbitration clause in the parties' "sub-servicing agreement" (the Agreement). For the following reasons, we hold that the arbitration of ONB's contribution claim is precluded by the doctrine of collateral estoppel and affirm the judgment of the circuit court.

BACKGROUND

The underlying plaintiff, Wayne Czarnik, filed a complaint against ONB, Wendover and several other defendants, seeking to recover damages for personal injuries he sustained when he fell through the roof of a home on March 19, 2003, while investigating a mold and water damage claim at the property. Therein, the plaintiff alleged, *inter alia*, that Wendover and ONB owned, operated, maintained and controlled the property and that the plaintiff was inspecting the roof at the request of Wendover. The plaintiff further alleged that Wendover and ONB were negligent in failing to warn of the dangerous condition of the roof, failing to inspect the roof prior to ordering him to work on it, failing to maintain or fix the roof, failing to warn him not to walk upon it, failing to stop the work until a safe and proper roof was installed or proper safety precautions were taken, failing to adequately supervise the work being done, failing to follow their own safety rules, and failing to properly schedule and coordinate the work.

Thereafter, ONB filed a counterclaim for contribution against Wendover and several other codefendants pursuant to the Joint Tortfeasor Contribution Act (the Contribution Act) (740 ILCS 100/0.01 et seq. (West 2002)). Therein, ONB alleged that Wendover and other defendants owed

2

the plaintiff a duty to use reasonable care in their respective management, inspection, control and supervision of the premises to provide the plaintiff with a safe workplace. It further alleged that if ONB were found liable to the plaintiff, it would be on account of the negligent acts or omissions of Wendover and the other codefendants in failing to inspect the premises, failing to operate or maintain the premises, failing to warn of any defects or hazards, and failing to provide adequate safeguards to prevent the injury. ONB sought contribution in an amount commensurate with the degree of negligence attributable to the other codefendants in causing any injuries proved by the plaintiff.

Subsequently, Wendover filed a motion to dismiss the contribution claim and to compel arbitration, asserting that Wendover and ONB were parties to an agreement that outlined the terms and conditions of their contractual relationship. Therein, article 8 includes an indemnification agreement between the parties which provides:

> "[ONB] agrees to indemnify and defend Wendover and hold
> Wendover harmless for any and all third party [l]osses arising out of
> the conduct of [ONB's] business (and not resulting from a breach
> of Wendover's obligations hereunder), including but not limited to
> * * * (vii) [d]amage to person or property occurring on a
> [m]ortgaged [p]roperty."

Additionally, article 6 of the Agreement provides in pertinent part that the parties agree to mandatory dispute resolution for "any dispute, controversy or claim of any kind or nature arising under or in connection with this Agreement." Accordingly, Wendover argued that the relevant

1-06-2379

contractual provisions mandated that the contribution claim be submitted to arbitration.

Ultimately, the circuit court heard arguments on the motion and denied it on the basis that a complaint for contribution was not arbitrable as a matter of law. Wendover filed the instant timely interlocutory appeal pursuant to Supreme Court Rule 307(a)(1). 188 Ill. 2d R. 307(a)(1).

ANALYSIS

Initially, we address the applicable standard of review. Generally, interlocutory appeals "are reviewed under an abuse of discretion standard to determine whether the trial court was correct in granting or denying the relief requested." Peregrine Financials & Securities v. Hakakha, 338 Ill. App. 3d 197, 202, 788 N.E.2d 263, 266 (2003). Nevertheless, here, where the trial court made no factual findings and its decision was based purely on a question of law, the decision to deny Wendover's motion to compel arbitration is reviewable *de novo*. Vassilkovska v. Woodfield Nissan, Inc., 358 Ill. App. 3d 20, 24, 830 N.E.2d 619, 623 (2005).

Defendant initially contends that the trial court erred in holding that contribution claims are not arbitrable as a matter of law citing Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc., 183 Ill. 2d 66, 697 N.E.2d 727 (1998) (Board of Managers), in support. There, the supreme court was called upon to resolve a conflict between the competing policies favoring enforcement of arbitration agreements and those policies favoring joinder and the resolution of multiparty conflicts in a single forum. Board of Managers, 183 Ill. 2d at 71, 697 N.E.2d at 730. The court held that despite the existence of claims by third parties or of pending multiparty litigation, once a contract containing a valid arbitration clause has been executed, "the parties are irrevocably committed to arbitrate all disputes arising under the

4

agreement." Board of Managers, 183 Ill. 2d at 74, 697 N.E.2d at 731. Thus, contrary to Wendover's assertion, the holding of Board of Managers does not stand for the broad proposition that all contribution actions are necessarily arbitrable. Rather, the court held that the policies favoring arbitration agreements and the right of parties to freely contract will not be trumped merely because multiple parties or claims are present. Board of Managers, 183 Ill. 2d at 74, 697 N.E.2d at 731. However, where the parties initially dispute whether their contribution claim falls within the scope of the parties' arbitration agreement, the court must first consider whether the parties agreed to arbitrate the particular subject matter of the dispute, an issue which the supreme court in Board of Managers was not called upon to address.

Additionally, despite the existence of an arbitrable issue, our courts have also considered issues of waiver and other principles that impact upon the right to arbitration. See, *e.g.,* Schroeder Murchie Laya Associates, Ltd. v. 1000 West Lofts, LLC, 319 Ill. App. 3d 1089, 1096, 746 N.E.2d 294, 300 (2001) (court considered whether a party waived its right to arbitration); City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n, 362 Ill. App. 3d 556, 840 N.E.2d 1283 (2005) (police union was barred by *res judicata* from arbitrating issue that had been decided by the board and reviewed on administrative review). ONB maintains that since its contribution claim is ultimately contingent upon a finding that it owes liability to the plaintiff, and a determination of relative fault of both ONB and Wendover will first be litigated in court, any subsequent arbitration to relitigate the issue of their *pro rata* share of liability would be barred under the doctrine of *res judicata* or collateral estoppel. ONB cites Peregrine Financial Group, Inc. v. Ambuehl, 309 Ill. App. 3d 101, 722 N.E.2d 723 (1999), in support.

1-06-2379

In Peregrine, subsequent to the supreme court decision in Board of Managers, the appellate court confronted the issue of whether the contractual right to pursue arbitration could be limited by the effect of *res judicata* or collateral estoppel. The court initially held that the court was the appropriate tribunal to determine the *res judicata* and collateral estoppel effect of prior court judgments upon subsequent arbitration proceedings. Peregrine, 309 Ill. App. 3d at 106, 722 N.E.2d at 727. It further held that "[i]f the arbitration actions involve issues previously reached, they are barred notwithstanding the parties' contractual rights to bring such actions." Peregrine, 309 Ill. App. 3d at 107, 722 N.E.2d at 727.

In making its ruling, the court relied on the case of Horwitz, Schakner & Associates, Inc. v. Schakner, 252 Ill. App. 3d 879, 625 N.E.2d 670 (1993), where the court held that an arbitration before one body of arbitrators was barred under *res judicata* by an earlier arbitration. The Peregrine court extended Schakner to prior judgments, finding that such judgments could also act as a bar to subsequent arbitration actions involving the same issues. Thus, "the defendants' rights to pursue claims in arbitration were dependent not only on the language of the [agreement] but also upon the effect of any prior adjudications that involved the same rights and issues." Peregrine, 309 Ill. App. 3d at 107, 722 N.E.2d at 728. The holding in Peregrine reflects the idea that although there is a broad presumption of arbitrability premised on the right to contract, arbitration cannot be intended to afford a litigant an opportunity to relitigate a dispute that has been previously resolved by a court of competent jurisdiction.

The application of collateral estoppel is governed by certain general principles: "(1) the issue decided in the prior adjudication is identical with the one presented [here], (2) there was a

6

final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." Gumma v. White, 216 Ill. 2d 23, 38, 833 N.E.2d 834, 843 (2005).

Here, ONB is correct that under section 2-1117 of the Code of Civil Procedure (735 ILCS 5/2-1117 (West 2002)), defendants' respective liability in tort to the plaintiff will necessarily be determined in the principle litigation. The version of the comparative fault statute in effect at the time of the plaintiff's injury provides in pertinent part as follows:

"Except as provided in Section 2-1118, in actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages." 735 ILCS 5/2-1117 (West 2002).

Accordingly, the statute requires a comparison of the fault of the plaintiff, the defendants sued by the plaintiff, and third-party defendants who could have been sued by the plaintiff. 735 ILCS

ILCS 5/2-1117 (West 2002); Illinois Pattern Jury Instructions, Civil, No. B45.03-A, Comments, at 197 (2006). Thus, based upon the mandate of the statute, the relative culpability of Wendover and ONB will be adjudicated in the principle litigation. The jury will be responsible for apportioning their percentage of fault, if any, to the plaintiff. To then allow the parties to relitigate their *pro rata* share of liability in arbitration would indeed impact the finality of judgments and contravene a primary purpose of arbitration, "to achieve a final disposition of differences between parties in an easier, more expeditious and less expensive manner than by litigation." Shultz v. Atlantic Mutual Insurance Co., 367 Ill. App. 3d 1, 10, 853 N.E.2d 94, 101 (2006).

Wendover acknowledges the effect of section 2-1117 on the parties, but argues that applying collateral estoppel here conflicts with the supreme court's decision in Board of Managers. We find that Board of Managers is not dispositive because it did not address issues of *res judicata* or collateral estoppel. There, a condominium board brought suit against the developers of the condominiums under theories of express and implied indemnity, alleging defects in the design and construction of the roofs. Thereafter, the developers filed a third-party complaint for conditional contribution or indemnification against the architect and other entities based upon their contracts to furnish design services for the buildings. Board of Managers, 183 Ill. 2d at 67, 697 N.E.2d at 728; see also Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Manufacturing, Inc., 288 Ill. App. 3d 801, 803, 681 N.E.2d 102, 104 (1997).

Notably, the condominium board did not sue the architect directly, and it is unclear whether the architect would have owed any direct liability to the plaintiff in tort. See, *e.g.,* 2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd., 136 Ill. 2d 302, 555

8

N.E.2d 346 (1990) (court held plaintiff's complaint against architect for negligent design was barred by economic loss doctrine where theory that architect was negligent in its design concerned the quality of the building and was a matter more appropriately resolved under contract law). This fact is significant because the architect may not have been joint and severally liable to the condominium board and its comparative fault under section 2-1117 would not have been at issue in the principle litigation. See Peregrine, 309 Ill. App. 3d at 112 n.2, 722 N.E.2d at 731 n.2 (finding that Board of Managers was inapposite where the developers' liability to the condominium board in the principle litigation would not have reached the issue of whether the architect was liable to the developer for contribution). Thus, the problem of collateral estoppel was not squarely before the court in Board of Managers.

In contrast, here, the plaintiff has sued both ONB and Wendover in the principle litigation for personal injuries in tort. Based upon the comparative fault statute (735 ILCS 5/2-1117 (West 2002)), the facts of this case would squarely implicate the collateral estoppel doctrine and turn the purpose of arbitration on its head. Accordingly, we follow the holding in Peregrine and find that the principle litigation will have preclusive effect, barring any subsequent arbitration of the contribution claim.

Additionally, subsequent to oral argument in this matter, Wendover sought leave to submit supplemental authority in support of its argument. Specifically, Wendover directed our attention to the comment to the Illinois Pattern Jury Instructions which states as follows:

> "In appropriate cases, consideration need also be given to 740
> ILCS 100/3 (1994), which provides that 'if equity requires, the

> collective liability of some as a group shall constitute a single
> share.'  For example, where one defendant's alleged liability is
> vicarious, based on the tort of another defendant (e.g., master and
> servant), these two defendants should be treated as a single share
> and one percentage assigned to them by the jury."  Illinois Pattern
> Jury Instructions, Civil, No. B45.03-A, Comments, at 200 (2006).

Wendover suggested that ONB and Wendover's liability to the plaintiff could be treated as a single share on the jury verdict form.  Thereafter, ONB filed a response, maintaining that Wendover had waived any right to assert this new argument as it does not support any argument previously made in its briefs.  We agree that this argument should have been made in Wendover's brief.  Even if we were to consider it, we would find this authority unavailing.  This case does not present a situation where one defendant's liability is vicarious nor would it be equitable to lump them together as a single share where one defendant may ultimately be less than 25 percent liable or not liable at all.  Accordingly, we reject Wendover's supplemental argument.

With that said, we also recognize that ONB and Wendover have provided for contractual indemnification in their Agreement.  The right of indemnity and the right of contribution are separate and distinct theories of recovery and are mutually exclusive remedies for allocating the plaintiff's damages.  Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 316, 821 N.E.2d 269, 276 (2004).   Indemnification is distinct from contribution in that it shifts the entire loss from one who has been compelled to pay the plaintiff's loss to another who actually was at fault.  Kerschner v. Weiss & Co., 282 Ill. App. 3d 497, 502, 667 N.E.2d 1351, 1355 (1996).

1-06-2379

Wendover is not foreclosed from demanding arbitration on its right to indemnification under its Agreement with ONB where the jury in the principle litigation would not be called upon to determine issues of indemnification under their contract, and where the right to indemnification falls within the scope of the parties' arbitration agreement.

Accordingly, for all of the foregoing reasons, we affirm the judgment of the circuit court denying Wendover's motion to compel arbitration of ONB's contribution claim.

Affirmed.

GREIMAN and CUNNINGHAM, JJ., concur.

**WAYNE CZARNIK,**

       **Plaintiff,**

  **v.**

**WENDOVER FINANCIAL SERVICES, an EDS Company, CLAIMS ADJUSTMENT SPECIALISTS, INC., FIDELITY NATIONAL INFORMATION SOLUTIONS, INC. and OLD NATIONAL BANCORP,**

       **Defendants.**

---

**OLD NATIONAL BANCORP,**

       **Defendant/Counterplaintiff-Appellee,**

  **v.**

**WENDOVER FINANCIAL SERVICES, an EDS Company,**

       **Defendant/Counterdefendant-Appellant,**

**(Fidelity National Information Solutions, Inc. And Claims Adjustments Specialists, Inc.,**

       **Counterdefendants).**

---

## No. 1-06-2379

**Appellate Court of Illinois
First District, Third Division**

**Filed: June 13, 2007**

---

**PRESIDING JUSTICE THEIS delivered the opinion of the court.**

**Greiman and Cunningham, JJ., concur.**

---

**Appeal from the Circuit Court of Cook County
Honorable Donald J. Suriano, Judge Presiding**

---

1-06-2379

**For DEFENDANTS -**          **James P. Buckley**
**APPELLANTS**                **James M. Carlson**
                              **Ungaretti & Harris LLP**
                              **3500 Three First National Plaza**
                              **Chicago, IL 60602**


**For PLAINTIFF -**           **Thomas P. Scherschel**
**APPELLEE**                  **Ellen L. Green**
                              **SmithAmundsen LLC**
                              **3815 East Main Street, Suite A-1**
                              **St. Charles, IL 60174**

                              **Michael Resis**
                              **SmithAmundsen LLC**
                              **150 North Michigan Avenue, Suite 3300**
                              **Chicago, IL 60601**