*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

### Nos. 16-CV-799 & 16-CV-911

ILLINOIS FARMERS INSURANCE CO., APPELLANT,

v.

ROBERT JOHN HAGENBERG, III, APPELLEE.

FILED 08/31/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeals from the Superior Court
of the District of Columbia
(CAV-3069-14)

(Hon. Brian F. Holeman, Motion Judge)

(Argued May 17, 2017                                   Decided August 31, 2017)

*Danny L. Worker*, with whom *Mary F. Sitko*, *Melissa H. Katz*, *Stephen Horvath*, and *Matthew Roberson* were on the brief, for appellant.

*Jacob Lebowitz* for appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and PRYOR, *Senior Judge*.

BECKWITH, Associate Judge: Appellant Illinois Farmers Insurance Company (Illinois Farmers) appeals the trial court's ruling that the coverage limits of three Illinois Farmers car-insurance policies covering appellee Robert John Hagenberg could "stack" or aggregate to allow Mr. Hagenberg to recover

compensation up to three times the policies' individual coverage limits. Illinois Farmers contends that the trial court erred when it held, following *Boatright v. Illinois Farmers Ins. Co.*, 2013 IL App (5th) 120297-U, 2013 WL 3776817, that the three policies' anti-stacking clauses were ambiguous and thus unenforceable under Illinois law. Illinois Farmers also appeals the trial court's grant of attorneys' fees to Mr. Hagenberg. We reverse both rulings.

**I.**

**A.**

Mr. Hagenberg was injured when a car struck his bicycle. The driver of the car had $25,000 in liability insurance, an amount insufficient to cover Mr. Hagenberg's medical expenses and other damages. Mr. Hagenberg himself had underinsured-motorist coverage, however, that would compensate him for the difference between his actual damages—capped at $500,000 by the policy—and the limit of the other party's liability coverage. Mr. Hagenberg's policy was issued by Illinois Farmers.[1]

---

[1] The underinsured-motorist provision contained in Mr. Hagenberg's Illinois Farmers insurance policy states that Illinois Farmers "will pay all sums which an insured person is legally entitled to recover as damages from the owner

(continued…)

Mr. Hagenberg sued the driver and Illinois Farmers in the Superior Court. Mr. Hagenberg's claims against the driver were negligence claims, and they were subsequently settled for the $25,000 limit of the driver's liability coverage. Mr. Hagenberg's cause of action against Illinois Farmers was breach of contract—he alleged that Illinois Farmers had failed to pay money owed to him under the underinsured-motorist provision. He specifically claimed that he was entitled to $475,000, the difference between the $500,000 coverage limit and the $25,000 paid by the driver.

Illinois Farmers moved to enforce an arbitration clause in the insurance policy, and the trial court, over Mr. Hagenberg's opposition, stayed the case and submitted the matter to binding arbitration. The arbitrator ultimately "awarded [Mr. Hagenberg] $750,000." Illinois Farmers did not pay this amount but instead paid Mr. Hagenberg $475,000.

---

(…continued)

or operator of an UNDERinsured motor vehicle because of bodily injury sustained by the insured person." "UNDERinsured Motor Vehicle" is defined in the policy as "a motor vehicle for which the owner or operator is insured or bonded for bodily injury liability . . . in amounts equal to or greater than the amounts [legally required in] Illinois, but less than the limits of" the policy's underinsured-motorist coverage. The policy states that an "insured person" is entitled to "the lesser of" "[t]he unrecovered amount of damages" and "[t]he [$500,000] limit[] of liability reduced by all amounts paid in damages to the insured person by or for any . . . liable [person or organization]."

Mr. Hagenberg was unsatisfied with the $475,000 recovery. He moved the trial court to vacate the arbitration stay, which it did, and he filed an amended complaint. In his amended complaint, Mr. Hagenberg revised his breach-of-contract claim to request $750,000 in damages, and he added claims for declaratory judgment and enforcement of the arbitration award. He did not rely in his amended complaint on the arbitrator's seemingly categorical language "award[ing] [him] $750,000," and in fact throughout the course of the litigation in the trial court and in this court, Mr. Hagenberg has conceded that the only issue before the arbitrator was the extent of his damages, not his entitlement to have Illinois Farmers *cover* those damages.[2] Instead, in claiming that he could recover the full $750,000 in damages from Illinois Farmers, Mr. Hagenberg relied on a contention—conceded by Illinois Farmers—that he was covered not only by his own insurance policy, but also by his parents' Illinois Farmers insurance policies.[3] Mr. Hagenberg's parents' insurance policies each provided $500,000 in

---

[2] *See also Shultz v. Atl. Mut. Ins. Co.*, 853 N.E.2d 94, 101 (Ill. App. Ct. 2006) ("Coverage disputes are not to be included in arbitration provisions of automobile liability policies arising under uninsured motorist provisions." (quoting *Rooney v. State Farm Mut. Auto. Ins. Co.*, 456 N.E.2d 160, 164 (Ill. App. Ct. 1983))).

[3] According to his amended complaint, Mr. Hagenberg learned that he was covered by his parents' insurance policies during the discovery process in the arbitration proceeding.

underinsured-motorist coverage, and Mr. Hagenberg asserted that all three policies' coverage limits could be "stacked" to provide up to $1,500,000 in coverage. He acknowledged that the policies contain anti-stacking language purporting to prohibit the aggregation of multiple policies' limits of coverage, but he contended that this language was ambiguous and thus unenforceable.[4]

Illinois Farmers filed an answer and counterclaim for declaratory judgment, and the parties each filed motions for summary judgment on the validity of the anti-stacking language. Illinois Farmers also filed a motion requesting that the arbitration award be "modified to reflect that [Illinois] Farmers' obligation is limited to the amount of coverage available under the policy" or, in the alternative, that the award be vacated on the ground that "the arbitrator exceeded his authority [by] render[ing] an award that would impermissibly require stacking."

The trial court issued an omnibus order granting summary judgment for Mr. Hagenberg and denying Illinois Farmers' motions for summary judgment and modification of the arbitration award. In ruling on the summary judgment motions, in particular, the court relied primarily on *Boatright*, 2013 IL App (5th)

---

[4] The anti-stacking clause and related provisions are set forth in the following section.

120297-U, an unpublished opinion of the Illinois Fifth District Appellate Court.[5] The court in *Boatright* had considered the enforceability of an anti-stacking clause in several Illinois Farmers policies issued to the plaintiffs in that case. The *Boatright* court held that the anti-stacking clause was ambiguous—and thus unenforceable—because by its terms, the clause applied only to policies issued by "members of the Farmers Insurance Group of Companies," and it was unclear whether "the named insurer on the declarations page" of the policies was one of those "members." *Id.* ¶ 32. The trial court in the present case found *Boatright* analytically sound and moreover concluded that *Boatright* was binding under the doctrine of collateral estoppel. The court accordingly held that the anti-stacking clause in the policies in this case was, like the clause in *Boatright*, ambiguous and unenforceable and entered judgment for Mr. Hagenberg in the amount of $750,000.

Further, upon Mr. Hagenberg's motion, the trial court granted attorneys' fees to Mr. Hagenberg under D.C. Code § 16-4425 (c) (2012 Repl.). The court

---

[5] In contrast, the trial court's denial of Illinois Farmers' motion to modify or vacate the arbitration award was not based on the holding of *Boatright*. Rather, it was based on the trial court's conclusion that the arbitrator determined only damages, not coverage, and that "[t]hus[] the fact that the arbitration award exceeds [Mr. Hagenberg's] coverage limit does not mean that the arbitrator exceeded the scope of his authority." See *supra* note 2 and accompanying text.

reasoned that Illinois Farmers' conduct in this case was "troublesome given that it successfully moved for submission of the personal injury dispute to arbitration, yet effectively refused to abide by the decision of the arbitrator." The court thought that by defending the validity of the anti-stacking clause, Illinois Farmers needlessly "expend[ed] considerable judicial resources litigating the exact same issue already decided by [the] appellate court [in *Boatright*]." The court thus concluded that "equitable and policy considerations" justified a fee award.

**B.**

Before proceeding to the legal issues presented in this appeal, we briefly summarize the pertinent parts of the three Illinois Farmers insurance policies central to this case. The policies are identical in all material respects. They each contain the following anti-stacking clause: "The limits provided by this policy may not be stacked or combined with the liability limits provided by any other policy issued to any Insured Person *by any of the Farmers Insurance Group of Companies*." (Emphasis added.) Though none of the three policies contains an express representation stating that it was issued by one of the "Farmers Insurance Group of Companies," each policy document does contain a "Notice of Information Practices" addendum that ends with the following:

> This notice is sent on behalf of the *Farmers Insurance Group of Companies*, whose members include, but are

not limited to:

> Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, *Mid-Century Insurance Company*, Farmers New Century Insurance, Farmers Insurance Company, Inc. (A Kansas Corp.), Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance Company of Columbus, Inc., Farmers Texas County Mutual Insurance Company, *Illinois Farmers Insurance Company*, Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, Civic Property and Casualty Company, Exact Property and Casualty Company, and Neighborhood Spirit Property and Casualty Company.

(Emphases added.)  The declarations page for each policy states that the policy was issued by "Illinois Farmers Insurance Company, Aurora, Illinois,"[6] and next to the name of the issuer is a "Farmers Insurance Group" logo.  See *infra* Appendix. Each policy also bears the purported signatures of the secretary and vice president of "Illinois Farmers Insurance Company" and "Mid-Century Insurance Company."

## II.

Illinois Farmers challenges the trial court's ruling that the anti-stacking

---

[6]  To be entirely accurate, the Declarations page states that the policy was "*underwritten by*:   Illinois Farmers Insurance Company, Aurora, Illinois." (Emphasis added.)    The policy documents indicate, however, that the "underwriter" is identical with "the Company . . . providing th[e] insurance."

clause in the three insurance policies is ambiguous and thus unenforceable. It argues that the trial court erred in concluding that *Boatright*'s holding on the enforceability of the anti-stacking clause in that case collaterally estopped Illinois Farmers from seeking to enforce the anti-stacking clause in the present case. Illinois Farmers further argues that as a substantive legal matter, the anti-stacking clause in the present case is unambiguous and enforceable. We address the collateral estoppel issue first.

## A.

Under the doctrine of collateral estoppel, a party is precluded from relitigating an issue that the party "actually litigated" in a prior judicial proceeding and that was "determined by a valid, final judgment on the merits." *Modiri v. 1342 Rest. Grp., Inc.*, 904 A.2d 391, 394 (D.C. 2006) (quoting *Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995)).[7] The party against whom collateral estoppel is invoked

---

[7] Both Mr. Hagenberg and Illinois Farmers assume that District of Columbia law governs the collateral estoppel effect of *Boatright* on our courts, and do not cite pertinent Illinois decisions on collateral estoppel in their briefs. We accordingly apply District of Columbia law. *But see* Restatement (Second) of Conflict of Laws § 95 (Am. Law Inst. 1971) ("What issues are determined by a valid judgment is determined, subject to constitutional limitations, by the local law of the State where the judgment was rendered."). It does not appear that our analysis would significantly differ were we to apply Illinois law. *See, e.g., Herzog v. Lexington Twp.*, 657 N.E.2d 926, 929–30 (Ill. 1995) (recognizing the propriety of non-mutual offensive collateral estoppel, see *infra* note 9, and setting forth the

(continued…)

must have had a "full and fair opportunity" to litigate the issue, and the determination of the issue in the prior proceeding must have been "essential to the judgment, and not merely dictum." *Id.* (quoting *Davis*, 663 A.2d at 501). Significantly, "the previously resolved issue must be *identical* to the one presented in the current litigation; similarity between the issues is insufficient." *District of Columbia v. Gould*, 852 A.2d 50, 56 (D.C. 2004) (emphasis added). Where the issue in question is the legal effect of a document, identity of the issues typically exists where the document in the current case is "identical in all relevant respects" to the document whose effect was adjudicated in the earlier action. Restatement (Second) of Judgments § 27 cmt. c (Am. Law Inst. 1982).[8] Whether these factors justify the application of collateral estoppel is a question of law that we review de novo.[9] *Franco v. District of Columbia*, 3 A.3d 300, 304 (D.C. 2010).

_____

(…continued)
requirements for its application under Illinois law).

[8] *See also DVI Receivables XIV, LLC v. Nat'l Med. Imaging, LLC*, 529 B.R. 607, 621 (E.D. Pa. 2015) ("[T]he facts of two cases need not be identical in every respect in order for the legal issues in the two cases to be identical for collateral estoppel purposes. The standard is instead one of materiality; issues are not identical if any difference in the facts has 'legal significance.'" (quoting *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984))), *aff'd sub nom. Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x 251 (3d Cir. 2016).

[9] Further, where, as here, the party invoking the collateral estoppel doctrine is not the defendant but instead the plaintiff—and where the plaintiff was not even

(continued…)

Illinois Farmers claims that the trial court erred in finding that *Boatright*'s holding on the ambiguity and enforceability of the anti-stacking clause in that case precluded litigation of the ambiguity and enforceability of the anti-stacking clause in the present case. Illinois Farmers relies primarily on the identity requirement, arguing that the collateral estoppel doctrine does not apply because the anti-stacking clause and related provisions in *Boatright* are not identical to those in the present case.

In *Boatright*, the plaintiffs sought to stack the underinsured-motorist-coverage limits for several Illinois Farmers insurance policies. 2013 IL App (5th) 120297-U, ¶¶ 2–3. The policies, however, contained language stating that the coverage limits could "not be stacked or combined with the limits provided by any other policy issued to [the policyholder] or a family member *by any member company of the Farmers Insurance Group of Companies*." *Id.* ¶ 9 (emphasis

_____

(…continued)
a party to the original suit and has sought "to foreclose [the] defendant from relitigating an issue the defendant . . . litigated unsuccessfully" in that original suit against an entirely different plaintiff—courts "apply . . . collateral estoppel 'with some caution.'" *Modiri*, 904 A.2d at 394–95 (quoting *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984), and *Newell v. District of Columbia*, 741 A.2d 28, 36 (D.C. 1999)). Thus, before applying collateral estoppel under such circumstances —that is, before applying so-called "non-mutual offensive collateral estoppel"—a court must "consider[] the fairness" of doing so. *Id.* at 395. This court reviews the trial court's fairness determination for abuse of discretion. *Id.* We do not have occasion to do so here because we reverse on other grounds.

added). The policies in *Boatright* also contained a "Notice of Information Practices" page listing the "members" of the "Farmers Insurance Group of Companies." *Id.* ¶ 11. Included in the list—which was identical to the list on the Notice of Information Practices page in the present case, reproduced in Part I.B, *supra*—was "Illinois Farmers Insurance Company." *See id.* As in the present case, the issuer of each policy was identified on the declarations page not as "Illinois Farmers Insurance Company" but as "Illinois Farmers Insurance Company, *Aurora, Illinois.*" *Id.* ¶ 6 (emphasis added).

The *Boatright* court found that a reasonable person could be uncertain as to whether "Illinois Farmers Insurance Company, Aurora, Illinois," referred to the same entity as "Illinois Farmers Insurance Company" and thus be uncertain as to whether the issuer of the policies, as identified on the declarations page, was one of the listed members of the Farmers Insurance Group of Companies. 2013 IL App (5th) 120297-U ¶¶ 28, 32. The court explained:

> Despite the ease of which to do so, . . . "Illinois Farmers Insurance Company, Aurora, Illinois[,]" . . . was [not] identified in the policy as a "member company of the Farmers Insurance Group of Companies." Nor do[es] th[is] name[] appear verbatim in the text listing the member companies of Farmers Insurance Group of Companies. Although "Illinois Farmers Insurance Company" . . . [is] named as [a] member[] of the Farmers Insurance Group of Companies, nowhere in the list is "Illinois Farmers Insurance Company, Aurora, Illinois"
> . . . .

*Id.* ¶ 26. Accordingly, the court concluded that the anti-stacking clause was ambiguous as to whether it prohibited the stacking of the three policies issued by "Illinois Farmers Insurance Company, Aurora, Illinois," and the court held that the clause was therefore unenforceable under the facts of the case.[10] *Id.* ¶ 32. The court thus allowed the limits of the three Illinois Farmers policies to stack. *Id.*

In so holding, the *Boatright* court rejected an argument that the policies' signature page resolved the ambiguity. 2013 IL App (5th) 120297-U, ¶ 28. As in the present case, the signature page contained signatures of officers of both "Illinois Farmers Insurance Company" and "Mid-Century Insurance Company"— entities whose precise names were included in the list of the Farmers Insurance Group members on the Notice of Information Practices page. *Id.* ¶ 27. The court recognized that the signature page supported Illinois Farmers' position that the policies were issued by a member (or by two members) of the Farmers Insurance Group of Companies, but believed that the page was insufficient to rebut the "alternative, but reasonable, interpretation . . . that the named insurer[ on the

---

[10] The court in *Boatright* also decided that the anti-stacking clause in a Mid-Century Insurance Company policy was ambiguous. 2013 IL App (5th) 120297-U, ¶ 32. We reject Illinois Farmers' argument that this fact negates the identity requirement for collateral estoppel. The *Boatright* court's ruling on the ambiguity of the Illinois Farmers policies is independent of its ruling on the ambiguity of the Mid-Century Insurance Company policy, notwithstanding that they were both supported by the same analysis.

declarations page], 'Illinois Farmers Insurance Company, Aurora, Illinois,' . . . having not been . . . identified [as a member of the Farmers Insurance Group of Companies] in the policy, [is] not [a] 'member compan[y] of the Farmers Insurance Group of Companies.'" *Id.* ¶ 28. The court also refused to consider Illinois Farmers' "submitted affidavit or [to consult] the Internet to determine which companies are 'member compan[ies] of the Farmers Insurance Group of Companies,'" reasoning that "courts may not summarily look to extrinsic evidence to transform language which is ambiguous on its face into unambiguous language." *Id.* ¶ 29.

The Illinois Farmers policies in *Boatright* are very similar to those in the present case. Most significantly, the anti-stacking clause in *Boatright* is "identical in all relevant respects" to the anti-stacking clause in the present case. Restatement (Second) of Judgments § 27 cmt. c. We do not consider it material that the *Boatright* anti-stacking clause bars stacking the limits of policies issued "*by any member company of* the Farmers Insurance Group of Companies" while the clause in the present case bars stacking the limits of policies issued "*by any of* the Farmers Insurance Group of Companies." (Emphases added.) There is no indication that the term "member company" had a special meaning in the *Boatright* policies such that the language "by any member company of" differed in practical meaning from the language "by any of"—and both cases' anti-stacking clauses are reasonably

understood to bar stacking the limits of policies issued by companies named in the list on the Notice of Information Practices page.

Similarly, the list of companies on the Notice of Information Practices page in *Boatright* is identical to the list in the present case—notably, the lists in both cases include "Illinois Farmers Insurance Company" but not "Illinois Farmers Insurance Company, Aurora, Illinois." The policies in both cases identify the issuer by the same name on the declarations page: "Illinois Farmers Insurance Company, Aurora, Illinois." The policies in both cases also contain a page bearing the signatures of officers of "Illinois Farmers Insurance Company" and "Mid-Century Insurance Company."

There is one material difference between the policies in *Boatright* and the policies in the present case: The declarations page of the policies in the present case displays a Farmers Insurance Group logo, but this logo was absent from the policies in *Boatright*.[11] The presence of a Farmers Insurance Group logo is a fact of legal significance as it may (and, as explained in the following section, does) help to clarify that the issuer of the policy is a member of the Farmers Insurance

---

[11] No such logo is mentioned in *Boatright*, 2013 IL App (5th) 120297-U. Moreover, a copy of the declarations page from *Boatright* is a part of the summary judgment record in the present case, and no Farmers Insurance Group logo is displayed on that page.

Group of Companies. The presence or absence of a logo is relevant in ascertaining whether the insured person knew that he was entering a contract with a member of the Farmers Insurance Group of Companies. *See Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001) (explaining that under Illinois law, the "primary objective" of a court construing a contract "is to ascertain and give effect to the intent of the parties to the contract"). And the presence or absence of the logo is also relevant to the determination of whether the insured could *reasonably* have believed that the issuer of the contract was not a member of the Farmers Insurance Group of Companies. *See Bruder v. Country Mut. Ins. Co.*, 620 N.E.2d 355, 362 (Ill. 1993) (explaining that in determining whether a provision in an insurance policy is so ambiguous as to be unenforceable, the question is whether there is "more than one reasonable interpretation").

We therefore conclude that the policies in *Boatright* and those in the present case are not "identical in all relevant respects," Restatement (Second) of Judgments § 27 cmt. c, and that the trial court erred in finding the collateral estoppel doctrine applicable.

## B.

Because *Boatright*'s holding is not binding under the collateral estoppel

doctrine, *Boatright*, being an unpublished decision, has no precedential value.[12]

*See* Ill. Sup. Ct. R. 23 (e) (stating that an unpublished opinion "is not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case"); *see also Gilbert v. Miodovnik*, 990 A.2d 983, 992 n.11 (D.C. 2010). Whether the anti-stacking clause in this case is ambiguous is therefore an issue that must be decided on the merits. The trial court held that the anti-stacking clause is ambiguous and hence unenforceable, adopting the *Boatright* court's analysis. We review the trial court's conclusion de novo because "[w]hether a contract is ambiguous is . . . a question of law." *Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009); *accord Koenig & Strey GMAC Real Estate v. Renaissant 1000 S. Michigan I, LP*, 2016 IL App (1st) 161783, ¶ 12, 68 N.E.3d 881, 886.

Under Illinois law—which governs the enforceability of the policies in this case[13]—anti-stacking provisions are not contrary to public policy.[14] *Hobbs v.*

---

[12] We note in accordance with this that our analysis below parts with that of the *Boatright* court in critical respects. We not only rely on the Farmers Insurance Group logo present in this case but absent in *Boatright*, but we also disagree with the *Boatright* court on the issue whether the terms "Illinois Farmers Insurance Company, Aurora, Illinois," and "Illinois Farmers Insurance Company" can reasonably be understood as referring to different entities.

[13] The trial court determined that "Illinois law governs the interpretation of the [insurance policies] and [their] language," and neither party has contested that

(continued…)

*Hartford Ins. Co.*, 823 N.E.2d 561, 564 (Ill. 2005). Accordingly, "unambiguous anti[-]stacking clauses will be given effect." *Bowers v. Gen. Cas. Ins. Co.*, 2014 IL App (3d) 130655, ¶ 9, 20 N.E.3d 843, 845–46. If, however, an anti-stacking clause is ambiguous, it "will be construed strictly against the insurer, who drafted the policy." *Pekin Ins. Co. v. Estate of Goben*, 707 N.E.2d 1259, 1262 (Ill. App. Ct. 1999); *see also Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1217 (Ill. 1992) ("Ambiguous terms are construed strictly against the drafter of the policy and in favor of coverage. This is especially true with respect to exclusionary clauses." (citations omitted)).

---

(…continued)
determination in this appeal.

[14] Anti-stacking provisions are explicitly authorized by Illinois statute. *See* 215 Ill. Comp. Stat. Ann. 5/143a-2 (5) (West 2016); *Grzeszczak v. Ill. Farmers Ins. Co.*, 659 N.E.2d 952, 959 (Ill. 1995). And Illinois courts, reasoning that underinsured-motorist coverage is a gap-filling measure, have concluded that "public policy does not require [the courts] to invalidate clearly written policy language" prohibiting the stacking of underinsured-motorist-coverage limits "simply to avoid disappointment to the insured." *Obenland v. Econ. Fire & Cas. Co.*, 599 N.E.2d 999, 1003, 1007 (Ill. App. Ct. 1992); *see also Grzeszczak*, 659 N.E.2d at 961; *Sulser v. Country Mut. Ins. Co.*, 591 N.E.2d 427, 430 (Ill. 1992). During oral argument in this case, counsel for Illinois Farmers argued that anti-stacking clauses are fair and proper—notwithstanding that they deprive policyholders of coverage they arguably have paid for—because, among other things, they purportedly help to "keep . . . premiums down." As Illinois law governs here, we are not presented with the question whether enforcement of anti-stacking clauses (or the specific anti-stacking clause in this case) is contrary to the public policy of the District of Columbia. *See generally Hubb v. State Farm Mut. Auto. Ins. Co.*, 85 A.3d 836, 839–40 (D.C. 2014).

An anti-stacking clause is not rendered ambiguous by the mere possibility of "creative" interpretations. *Bruder*, 620 N.E.2d at 362. Rather, an anti-stacking clause is considered ambiguous only if its "language is subject to more than one *reasonable* interpretation." *Hobbs*, 823 N.E.2d at 564 (emphasis added); *see also Bruder*, 620 N.E.2d at 362 ("Reasonableness is the key."). A court applying Illinois law must "not strain to find ambiguity in an insurance policy where none exists." *Travelers*, 757 N.E.2d at 491 (quoting *McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125, 1127 (Ill. 1999)). Instead, in assessing the ambiguity of the anti-stacking clause, the court should adhere to the "well-settled precept of Illinois law that . . . the primary objective in interpreting the provisions of an insurance policy is to give effect to the parties' intentions." *Id.* at 497.

Applying these principles to the present case, we conclude that there is no reasonable interpretation of the anti-stacking clause in the Illinois Farmers policies that allows the three policies' limits to stack with each other. The anti-stacking clause of each policy explicitly precludes stacking the underinsured-motorist-coverage limit with the limit of "any other policy issued . . . by any of the Farmers Insurance Group of Companies." The list of the members of the Farmers Insurance Group of Companies on the Notice of Information Practices page includes "Illinois Farmers Insurance Company" and "Mid-Century Insurance Company." Corporate officers of "Illinois Farmers Insurance Company" and

"Mid-Century Insurance Company" signed each of the policies, strongly indicating that one or both of these two members of the Farmers Insurance Group of Companies issued the three policies—and thereby triggering the anti-stacking clause.

Further confirming this interpretation, the declarations page of each of the policies states that the issuer is "Illinois Farmers Insurance Company, Aurora, Illinois." A reasonable person would ordinarily read "Aurora, Illinois," as the location of the office of the company, not as part of the company name. A name that included "Aurora, Illinois," would be unusually redundant—it would include "Illinois" twice.[15] Thus, a reasonable person would understand "Illinois Farmers

---

[15] Mr. Hagenberg notes that many of the names of companies listed on the Notice of Information Practices page of the insurance policies contain geographical components, see *supra* Part I.B, and contends that "[l]ooking at the names in the . . . list[] . . . , an insured could conclude reasonably that adding the name 'Aurora' and 'Illinois' [to 'Illinois Farmers Insurance Company'] could well indicate *another* insurance company" distinct from Illinois Farmers Insurance Company. But as Illinois Farmers points out, none of the names in the list "have the formulation . . . where the company name is followed by '*City, State*.'"

Mr. Hagenberg also notes that "Aurora, Illinois," is a "quite incomplete" address, "without a street address or post office box number." But the insufficiency of "Aurora, Illinois," as a mailing or physical address for Illinois Farmers does not mean that "Aurora, Illinois," can be reasonably understood as part of the insurer's name. Such a conclusion would make sense if "Aurora, Illinois," could only be understood as either an address or part of the company name. "Aurora, Illinois," is not reasonably understood as either of these things, however—it is instead reasonably understood as the city and state of Illinois

(continued…)

Insurance Company, Aurora, Illinois," to refer to Illinois Farmers Insurance Company, a listed member of the Farmers Insurance Group of Companies. A reasonable person would not believe that "Illinois Farmers Insurance Company, Aurora, Illinois," and "Illinois Farmers Insurance Company" referred to two distinct companies. *Contra Boatright*, 2013 IL App (5th) 120297-U, ¶ 26.

But even if it would be reasonable to read "Illinois Farmers Insurance Company, Aurora, Illinois," in isolation as referring to an entity other than Illinois Farmers Insurance Company—and thus to an entity that is not a member of the Farmers Insurance Group of Companies—such a reading is foreclosed by the Farmers Insurance Group logo, which is immediately adjacent to "Illinois Farmers Insurance Company, Aurora, Illinois," on the declarations page.[16] See *infra*

---

(…continued)
Farmers' office.

[16] Precedent on the relevance of logos and insignia on the interpretation of contracts under Illinois law is sparse and the parties have not cited any. In *Yellow Book Sales & Distribution Co. v. American Eagle Pest Elimination, Inc.*, 2011 IL App (1st) 102564-U, 2011 WL 10071854, an unpublished, and thus nonprecedential, case, *see* Ill. Sup. Ct. R. 23 (e), the court found the presence of the plaintiff's logo on the contract pertinent in determining whether the plaintiff was a party to the contract. 2011 IL App (1st) 102564-U, ¶¶ 12–14. The present case is analogous—the only difference being that the logo in the present case does not identify the issuer of the policy but rather the issuer's membership in or affiliation with an entity, the Farmers Insurance Group.

The court in *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605 (7th

(continued…)

Appendix.  It would be unusual for an issuing company that is not part of the Farmers Insurance Group to include a Farmers Insurance Group logo next to its name on the declarations page.  The only reasonable reading is that the issuer of the policies—whether it is called "Illinois Farmers Insurance Group, Aurora, Illinois," or "Illinois Farmers Insurance Group"—is one of the members of the Farmers Insurance Group of Companies, and is thus a company to whose policies the anti-stacking clause applies.

Mr. Hagenberg argues that Illinois Farmers could have made the insurance policies clearer:

> If [Illinois] Farmers had intended that the name of its company, which it chose to affix to the top of its declarations page, was to be read to not include the city listed and the state listed as part of the company name,

---

(…continued)

Cir. 2008), concluded that a logo contained in the letterhead on which the contract was printed identifying one of the parties as "Coni-Seal Automotive Brake Parts" did not preclude that party from claiming sales commissions for automotive parts beyond brake parts.  *Id.* at 610–11 (emphasis removed).  The court explained that "Coni-Seal's logo no more forms a part of the contract than does its address and telephone number, which are printed at the bottom of the page." *Id.* at 611.  *AA Sales* is distinguishable from the present case because the logo was contained in the letterhead on which the contract was printed, not, as in the present case, within the contract itself.  Further, the *AA Sales* court was rejecting an argument that the logo limited the operative effect of otherwise clear terms of the contract—the court was not presented with an argument, like the one in the present case, that a logo could help identify a party to a contract or the party's membership in a group of companies.

> . . . then the message at the top easily could [have] be[en] changed to make that message clear. Simply inserting the phrase "located in"[] or "with its main office in" would have accomplished that goal.

> . . . [The] insurer easily could have inserted the message "A MEMBER OF THE []FARMERS GROUP OF COMPANIES" at the top of the declarations page . . . .

(Ellipses omitted.) While we agree that the policies could have been made clearer in these ways, we do not find the policy language so unclear as to permit a reasonable person to conclude that the issuer of the policies was not a member of the Farmers Insurance Group of Companies or to have doubt about whether the anti-stacking clause is triggered in the present case.[17]

---

[17] Mr. Hagenberg also cites a provision of the policies contained under the heading "Additional Other Insurance Provisions":

> The UNDERinsured Motorist coverage provided by this endorsement is excess over any other collectible automobile underinsured motorist insurance that covers the same accident or occurrence and applies only to the extent the limits of liability of this policy exceed the limits of liability of the other UNDERinsured motorist insurance. The limits of liability of all other UNDERinsured motorist coverage available to you and any family member must be exhausted before the coverage provided by this policy applies.

Mr. Hagenberg argues that "[t]he language clearly implies that more than one limit of [underinsured-motorist] coverage could come into play" because "[l]imits of [underinsured-motorist] coverage from other policies do not have to be exhausted, if those limits never stack and do not exist." While Mr. Hagenberg is correct that

(continued…)

Accordingly, we conclude that the anti-stacking clause is not ambiguous under Illinois law. It unambiguously precludes the stacking of the underinsured-motorist-coverage limits of multiple policies issued by Illinois Farmers, including the three policies at issue in this case. The clause is therefore enforceable, and the trial court's rulings on the parties' cross-motions for summary judgment are in error.

## III.

We next turn to Illinois Farmers' claim that the trial court erred in awarding attorneys' fees to Mr. Hagenberg under D.C. Code § 16-4425 (c) (2012 Repl.) and its claim, in the alternative, that the trial court awarded Mr. Hagenberg an unreasonable attorneys' fees amount. We review de novo the trial court's determination that it possessed statutory authority to award attorneys' fees, and we review the trial court's exercise of that authority for abuse of discretion. *Assidon v. Abboushi*, 16 A.3d 939, 942 (D.C. 2011). As explained below, because the

_____

(…continued)

the language anticipates stacking under certain circumstances, the language does not indicate *when* such stacking would be appropriate—let alone indicate that stacking is permitted under the present circumstances. Thus, the language does not support a conclusion that stacking is appropriate here (where all three policies were issued by members of the Farmers Insurance Group of Companies) or a conclusion that the anti-stacking clause is ambiguous under the facts of this case.

principal basis for the trial court's fee award—namely, that Illinois Farmers wasted Mr. Hagenberg's and the court's time and resources with a meritless anti-stacking argument—turned out to be erroneous, see *supra* Part II, we must vacate the fee award and remand for further proceedings. Several issues likely to arise on remand are also addressed below.

**A.**

The trial court awarded Mr. Hagenberg attorney's fees under D.C. Code § 16-4425 (c), which provides that "[o]n application of a prevailing party to a contested judicial proceeding [to vacate, modify, or enforce an arbitration award], the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred after the award is made." This provision is most naturally understood as allowing a prevailing party to collect only those attorneys' fees that resulted from litigation related to the proceeding to confirm, modify, or vacate the award; it does not broadly authorize attorneys' fees for any and all post-arbitration-award judicial proceedings. *See* Rev. Unif. Arbitration Act § 25 cmt. 3, 7 U.L.A. 90 (2009) (explaining that the attorneys' fees provision "promotes the statutory policy of finality of arbitration awards by adding a provision for recovery of reasonable attorney's fees and reasonable expenses of litigation to prevailing parties *in contested judicial actions to confirm, vacate, modify or correct an*

*award*" (emphasis added)).

In the trial court, Illinois Farmers filed a motion to modify or vacate the $750,000 arbitration award, requesting that the award be "modified to reflect" the $500,000 coverage limit or, in the alternative, be vacated because "the arbitrator exceeded his authority [by] render[ing] an award that would impermissibly require stacking." The trial court denied this motion. Moreover, Mr. Hagenberg's motion for partial summary judgment contained a request to enforce the arbitration award, which the trial court granted by confirming the arbitration award. Thus, there were contested proceedings in the trial court that rendered Mr. Hagenberg eligible to collect attorneys' fees pursuant to D.C. Code § 16-4425 (c).

Mr. Hagenberg's potential eligibility to recover attorneys' fees has not been undermined by our resolution of the anti-stacking issue in Part II, *supra*. The trial court's denial of the motion to modify or vacate the arbitration award and the court's confirmation of the arbitration award were not predicated on the trial court's erroneous ruling that the anti-stacking clause was ambiguous and unenforceable. Instead, they were based on the trial court's determination that the arbitrator's $750,000 award did not "exceed[] the scope of [the arbitrator's] authority"—even if it did exceed Mr. Hagenberg's $500,000 coverage limit— because the arbitrator had not been asked to decide the coverage limits applicable

to Mr. Hagenberg but rather had been asked only to decide the damages that Mr. Hagenberg had sustained. See *supra* notes 2 & 5. In other words, the trial court ruled that the arbitrator did not invalidate or violate Mr. Hagenberg's coverage limit or the anti-stacking clause, because the arbitrator never made a coverage determination: The arbitrator only made a *damages* determination. Our holding that the anti-stacking clause is unambiguous and enforceable does not upset this ruling.

But although Mr. Hagenberg's *eligibility* to recover attorneys' fees under D.C. Code § 16-4425 (c) rests on a ruling untouched by our disposition of this appeal, Mr. Hagenberg's *entitlement* to recover such fees is called into some doubt by our holding that the anti-stacking clause is unambiguous and enforceable. D.C. Code § 16-4425 (c) provides that the prevailing party to a contested proceeding to vacate, modify, or enforce an arbitration award "may" be awarded attorneys' fees. This "provision is expressly permissive and contemplates a determination of both eligibility and entitlement." *Fraternal Order of Police, Metro. Police Dep't Labor Comm. v. District of Columbia*, 52 A.3d 822, 828 (D.C. 2012) (construing the Freedom of Information Act's fee provision, D.C. Code § 2-537 (c) (2010 Supp.)). A party is eligible to recover fees if the statutory requirements of D.C. Code § 16-4425 (c) are satisfied, but whether an otherwise eligible party is entitled to such fees depends on "equitable considerations" and is committed to the trial court's

sound discretion.  Rev. Unif. Arbitration Act § 25 cmt. 5, 7 U.L.A. 90; *see also Fraternal Order of Police*, 52 A.3d at 828.

"There is no precise rule or formula" for determining whether it is equitable to award attorneys' fees under D.C. Code § 16-4425 (c).  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).  A trial court should, however, consider whether awarding attorneys' fees furthers the "policy—inherent in election of arbitration . . . —that the parties have bargained for the arbitrators' judgment, even more than for legal correctness," and that a party thus should not lightly seek to renege on that bargain in light of an unfavorable result.  *Cathedral Ave. Co-op., Inc. v. Carter*, 947 A.2d 1143, 1152–53 (D.C. 2008).  As Mr. Hagenberg points out, "[t]he arbitration process would be ineffective if losers could just return to court to relitigate their position without any threat of additional risk or punishment."  *See also* Rev. Unif. Arbitration Act § 25 cmt. 3, 7 U.L.A. 90 ("Potential liability for the opposing parties' post-award litigation expenditures will tend to discourage all but the most meritorious challenges of arbitration awards.").  Whether the losing party in the contested proceeding acted in bad faith is not a dispositive factor in the equities analysis, since D.C. Code § 16-4425 (c) displaces the "American Rule" on fee awards and the attendant common-law exceptions.  *See McClintic v. McClintic*, 39 A.3d 1274, 1277–78 (D.C. 2012); *Cathedral Ave. Co-op.*, 947 A.2d at 1159–60. Still, the potential merit of the losing party's arguments and the losing party's

motivation in making those arguments may be relevant to the equities analysis.

The trial court here properly conducted an equitable inquiry in light of the purposes of the arbitration law. It reasoned that Mr. Hagenberg was entitled to attorneys' fees because in the post-arbitration proceedings, Illinois Farmers had argued that the anti-stacking clause was enforceable despite the *Boatright* court's holding to the contrary and despite the fact that Mr. Hagenberg had given Illinois Farmers early notice that he intended to rely on *Boatright*. The court stated that "[i]t strains credulity that an institutional litigant [such as Illinois Farmers] would not be aware of precedent or would expend considerable judicial resources litigating the exact same issue already decided by an appellate court." The court also found it "troublesome" that Illinois Farmers "successfully moved for submission of the personal injury dispute to arbitration, yet effectively refused to abide by the decision of the arbitrator." The court thus found it equitable to require Illinois Farmers to pay attorneys' fees.

The trial court's reasoning on the equities may have been entirely sensible in light of the trial court's earlier rulings that *Boatright* was binding and that the anti-stacking clause was unenforceable. But because we reverse those rulings—finding them legally erroneous—the basis for the trial court's equities analysis has been undermined. The trial court's exercise of discretion was therefore "supported by

improper reasons," and the trial court will accordingly need to revisit its equitable analysis on remand. *Johnson v. United States*, 398 A.2d 354, 367 (D.C. 1979).

**B.**

Illinois Farmers is not content to merely attack the trial court's equitable analysis. It argues that it was inappropriate for the court to award *any* attorneys' fees under D.C. Code § 16-4425 (c) because "[t]he crux of the litigation below was not a proceeding to enforce an arbitration award, but rather a declaratory judgment action to determine a legitimate coverage dispute"—that is, the dispute over the anti-stacking clause. Illinois Farmers contends that "[t]he majority of the claimed fees were not associated with the pleadings filed relating to the award; instead the majority of the fees were awarded for the determination of a coverage issue."[18] Mr. Hagenberg responds by pointing out that even though the parties' post-arbitration dispute centered on coverage, one of the principal means chosen by

---

[18] Illinois Farmers also argues in its reply brief that it "brought its request for modification or vacatur [of the arbitration award] pursuant to the Illinois Uniform Arbitration Act and the Illinois Insurance Code," not the Revised Uniform Arbitration Act, D.C. Code § 16-4401 *et seq*. Illinois Farmers did not present this argument in the trial court or in its opening brief, and we decline to consider it. *See Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 304 n.11 (D.C. 2006). We accordingly do not have occasion to review the trial court's determination that the Revised Uniform Arbitration Act governed Illinois Farmers' motion to modify or vacate the arbitration award and Mr. Hagenberg's subsequent motion for attorneys' fees.

Illinois Farmers to litigate the coverage issue was a motion to modify or vacate the arbitration award. Mr. Hagenberg argues that Illinois Farmers "could have . . . challenge[d] coverage . . . through . . . forums or means [other than contesting the arbitration award]—but it did not." Because Illinois Farmers "chose to move to modify or vacate the [arbitration] award," Mr. Hagenberg argues, Illinois Farmers became "subject[] . . . to the attorney's fees provision found" in D.C. Code § 16-4425 (c).

As explained in the preceding section, we agree with Mr. Hagenberg's position that because Illinois Farmers moved to modify or vacate the arbitration award, Mr. Hagenberg became eligible to recover attorneys' fees under D.C. Code § 16-4425 (c). In agreeing with Mr. Hagenberg, we do not, as Illinois Farmers charges, "plac[e] form over substance." It is not the fact that Illinois Farmers called its motion a "motion to modify and/or vacate arbitration award" that triggered D.C. Code § 16-4425 (c) but the fact that as relief Illinois Farmers requested that the court "modify[] the award or in the alternative vacat[e]" it. By requesting such relief, the provisions of the District of Columbia Revised Uniform Arbitration Act were clearly implicated. *See* D.C. Code §§ 16-4423, -4424 (2012 Repl.); *Stuart v. Walker*, 143 A.3d 761, 768 (D.C. 2016) (explaining that "the statutory grounds for reviewing an arbitration award" are set forth in the Revised Uniform Arbitration Act). And as Mr. Hagenberg points out, once Illinois Farmers

filed a motion to modify or vacate the arbitration award, "[Mr.] Hagenberg had only two choices, litigate against [the motion] . . . through conclusion or give up on collecting the" arbitration award.

That Illinois Farmers' motion to modify or vacate the arbitration award was arguably a mere vehicle to advance its coverage argument is, however, relevant to the determination whether equitable circumstances entitled Mr. Hagenberg to a fee award. Illinois Farmers' coverage argument was, after all, meritorious: As explained in Part II, *supra*, the anti-stacking clause is enforceable. And it could arguably be inferred from the fact that Illinois Farmers filed the motion to modify or vacate *in addition to* filing a motion for summary judgment on the anti-stacking issue that by filing the motion to modify or vacate, Illinois Farmers was merely trying to ensure that it had preserved every potential avenue for relief on its meritorious anti-stacking argument. We leave it to the trial court to decide in the first instance whether such an inference is supported by the facts and how the inference affects the equities of granting attorneys' fees.

Further, Illinois Farmers' contention that it should not be forced to pay attorneys' fees for litigation that did not concern the validity of the arbitration award has merit. As explained in the preceding section, D.C. Code § 16-4425 (c) authorizes awarding attorneys' fees arising from post-arbitration proceedings to

modify, vacate, or confirm an arbitration award—not all post-arbitration proceedings unqualifiedly. In awarding attorneys' fees to Mr. Hagenberg, the trial court relied on a work log submitted by Mr. Hagenberg's attorneys. This log shows not only work hours relating to the motion to modify or vacate the arbitration award but also hours relating to the motions for summary judgment. The trial court did not make an assessment as to how many hours Mr. Hagenberg's attorneys spent working on litigation within the scope of D.C. Code § 16-4425 (c), but instead awarded attorneys' fees for all hours. On remand, if the trial court concludes that it is appropriate to award attorneys' fees to Mr. Hagenberg, the trial court should take care to compensate Mr. Hagenberg only for his attorneys' work on litigation within the scope of D.C. Code § 16-4425 (c)—that is, litigation related to contested proceedings to modify, vacate, or confirm an arbitration award. To the extent that Mr. Hagenberg's attorneys' work on the motion to modify or vacate the arbitration award overlapped with the attorneys' work on other matters, it is within the trial court's discretion to award attorneys' fees for that work. *See FBR Capital Markets & Co. v. Hans*, 12 F. Supp. 3d 59, 62 (D.D.C. 2014) (awarding attorneys' fees to a prevailing party even though the attorneys' work on litigation compensable under D.C. Code § 16-4425 (c) overlapped with the attorneys' work on non-compensable litigation under the Federal Arbitration

Act).[19]

## C.

Illinois Farmers' final argument is that the trial court erred in supposedly uncritically applying the "[United States Attorney's Office] *Laffey*[20] Matrix" in determining the hourly rate for the attorneys' fees award.[21] Illinois Farmers

---

[19] Illinois Farmers also notes that Mr. "Hagenberg's counsel accepted this case pursuant to a contingent fee arrangement" and claims that "[a]s [Mr.] Hagenberg did not incur any legal fees in this case, . . . it was inequitable to award attorneys' fees." Illinois Farmers does not cite any authority for this argument, and we agree with Mr. Hagenberg that "there is no prohibition of an award of attorney's fees in contingency fee cases." As Mr. Hagenberg points out, "in this case the attorney's fees awarded do not go solely to counsel but are in fact part of Hagenberg's total recovery." Thus, "the award of attorney's fees significantly benefits [Mr.] Hagenberg as the increased recovery offsets the contingency fee that gets paid to counsel." *Cf. District of Columbia v. Patterson*, 667 A.2d 1338, 1348 (D.C. 1995) (reversing an attorneys' fees award in a case involving a contingency-fee arrangement, but nowhere indicating that a fees award is inappropriate in a contingency-fee case).

[20] "The *Laffey* matrix[ is] a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds,* 746 F.2d 4 (D.C. Cir. 1984)." *Covington v. District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995). It has been updated since the 1983 *Laffey* decision. *See id.*

[21] We do not address Illinois Farmers' argument that "the amount of hours claimed by [Mr.] Hagenberg is not reasonable." This issue is not ripe for review, given our determination above that to the extent that the trial court on remand awards attorneys' fees to Mr. Hagenberg, it will need to determine afresh which work by Mr. Hagenberg's attorneys' is compensable under D.C. Code § 16-4425 (c). See *supra* Part III.B.

contends that "[t]he full *Laffey* index was not appropriate in this case as the issues were not complex and were limited to one issue, the applicability of the anti-stacking language." *See Hines v. District of Columbia*, No. CV 13-695 (JDB-AK), 2014 WL 12538903, at *5 (D.D.C. Feb. 21, 2014) ("Federal courts are not automatically required to award *Laffey* rates but instead they can look at the complexity of the case and use their discretion to determine whether such rates are reasonable and warranted."), *report and recommendation adopted,* 2014 WL 12538904 (D.D.C. Mar. 18, 2014). Here, the trial court compensated Mr. Hagenberg for work done by the lead attorney at a *Laffey* rate of $455 per hour. Determining that the lead attorney worked 170.30 hours and adding in work done by other attorneys and a paralegal,[22] the trial court awarded a total in $85,542.07 in attorneys' fees.

We reject Illinois Farmers' argument. This court has held that the rates set in the *Laffey* matrix are "presumptively reasonable." *Tenants of 710 Jefferson St., NW v. District of Columbia Rental Hous. Comm'n*, 123 A.3d 170, 184 (D.C. 2015). Indeed, this court has held that "[d]eviations from the Laffey Matrix's presumptively reasonable measure should not be lightly undertaken and need to be

---

[22] Another attorney worked 3.75 hours at a *Laffey* rate of $386 per hour, a third attorney worked 18.25 hours at a *Laffey* rate of $315 per hour, and a paralegal worked 5.58 hours at a *Laffey* rate of $154 per hour.

substantially supported." *Id.* Thus, although the trial court could perhaps have chosen not to apply the *Laffey*-matrix rate, Illinois Farmers has not shown an abuse of discretion in the trial court's decision to apply the *Laffey*-matrix rate. *See 1230-1250 Twenty-Third St. Condo. Unit Owners Ass'n v. Bolandz*, 978 A.2d 1188, 1192 (D.C. 2009) ("This court generally defers to the broad discretion of the trial judge in the calculation and award of attorney's fees." (quoting *Pellerin v. 1915 16th St., N.W., Co-op. Ass'n*, 900 A.2d 683, 690 (D.C. 2006))).

## IV.

For the foregoing reasons, we reverse the trial court's determination that the anti-stacking clause is unenforceable and the trial court's award of attorneys' fees. On remand, the trial court should enter summary judgment for Illinois Farmers on the anti-stacking-clause issue, reconsider the attorneys' fees award, and conduct such other proceedings as are consistent with this opinion.

*So ordered.*

## Appendix

## Declarations-Page Header

**UNDERWRITTEN BY:**

ILLINOIS FARMERS INSURANCE COMPANY, AURORA, ILLINOIS
A STOCK INSURANCE COMPANY, HEREIN CALLED THE COMPANY



FARMERS

DECLARATIONS